Enrique PADILLA, Petitioner,

v.

Ernest J. LaFRANCE, et al., Respondents.

No. 94–0579.

Supreme Court of Texas.

Argued Jan. 3, 1995.

Decided May 25, 1995.

Rehearing Overruled Oct. 5, 1995.

James B. Lewis, Ronald P. Schramm, Glover Anderson Chandler & Uzick, Houston, for petitioner.

John Stevenson, Jr., Stevenson Albright & Ammons, Dennis R. Mundy, D. Craig Olivier, Jeffrey W. Hitt, Olivier & Steidley, Houston, for respondents.

PHILLIPS, Chief Justice, delivered the opinion of the Court, joined by GONZALEZ, HIGHTOWER, HECHT, CORNYN, SPECTOR, and OWEN, Justices.

The primary issue presented is whether a series of letters between the parties' representatives constituted a written settlement agreement enforceable under Texas Rule of Civil Procedure 11, even though plaintiffs withdrew their consent to the settlement before the letters were filed with the court and before judgment was rendered on the agreement. The court of appeals held that any agreement was unenforceable under Rule 11 because plaintiffs revoked consent before the letters were filed with the court. 875 S.W.2d 730. Because we hold that the letters constituted an enforceable Rule 11 agreement, we reverse the judgment of the court of appeals and remand to the trial court with instructions to enforce the parties' settlement agreement.

I

One member of the LaFrance family was killed and two others were seriously injured when their vehicle collided with that driven by Enrique Padilla. After the LaFrances sued Padilla, his insurer, State Farm Mutual Automobile Insurance Company, assumed

defense of the claims. The parties subsequently engaged in settlement negotiations and, as discussed below, vigorously dispute whether an enforceable settlement agreement was consummated.

On April 10, 1991, Jeffrey Steidley, the LaFrances' attorney, mailed a settlement demand to Brian Chandler, Padilla's attorney, providing in pertinent part as follows:

Dear Mr. Chandler:

You are quite familiar with the facts and circumstances surrounding the above referenced matter. At this time we make demand for policy limits of $40,000.00 for full and final settlement of this case against the insured that you represent. *Payment* of this sum should be made on or before Tuesday, April 23, 1991 at 5:00 p.m., by delivery of checks in the appropriate amount to the offices of the undersigned made payable in the following amounts and to the following payees:

One check in the amount of $20,000.00 to Madeleine LaFrance As Next Friend of Michelle LaFrance and Olivier & Steidley.

One check in the amount of $20,000.00 made payable to Ernest J. LaFrance, Marlene Luther, Marilyn Koenig, Madeleine LaFrance and Olivier & Steidley, their attorneys of record.

\* \* \* \* \* \*

Please be advised that although I will be more than happy to discuss this case with you or any of your representatives, no oral discussion that we may have will serve to alter the time limits expressed in the correspondence. I look forward to *receipt* of the checks on or before date specified, failing which this offer to settle will be withdrawn and my clients will proceed to perfect their rights under Texas law, the substance of which I know you are well aware.

Chandler forwarded this letter to Phil Bradshaw, the State Farm adjuster handling the claim, who telephoned Steidley's office on April 15 and spoke with Sherea Carry.[1] Bradshaw informed Carry of an outstanding $1,600 medical lien for treatment to Michelle

LaFrance that needed to be cleared up in connection with the settlement. Carry responded that she would have Steidley call Bradshaw to discuss the lien. When Bradshaw did not hear back from Steidley, he called Steidley's office on April 18 and again on the morning of April 23 to discuss the lien. Each time he was able to speak only with Carry, who informed Bradshaw that the lien had not yet been resolved.

When Bradshaw still had not heard from Steidley by the afternoon of April 23, the settlement deadline, he faxed this handwritten letter to Steidley:

Dear Mr. Steidley,

This will confirm our settlement agreement of 4/18/91, whereby State Farm agreed to meet the policy limit demands set out in your letter of 4/10/91. The only thing holding up resolution of this is the hospital lien re: Michelle. I await word from you regarding the lien so I know to whom to make drafts payable.

It is unclear from the record what Bradshaw was referring to by the "agreement of 4/18/91." Steidley responded before 5:00 p.m. the same day, by fax and regular mail, with this letter:

Dear Mr. Bradshaw:

This letter will confirm that the above referenced matter has been settled for all applicable policy limits, which have been represented to us to be $40,000.00. Please forward settlement checks in the above referenced matter. This office will agreed [sic] to take care of the lien filed by Medical Center Hospital out of the settlement funds forwarded by your office.

Your attention to this matter is greatly appreciated.

Bradshaw did not see Steidley's response until he arrived at his office the next morning, April 24. Approximately one week later, Chandler tendered two settlement checks for $20,000 each to Steidley, along with a formal settlement agreement. Steidley, however, refused to accept the checks or sign the agreement, contending that Padilla had not

1. The record does not disclose whether Carry was an attorney, legal assistant, or secretary.

timely accepted the April 10 settlement offer.[2]

Padilla subsequently filed Steidley's April 23 letter with the court, describing it as "an acceptance of a settlement." Padilla then filed a counterclaim in the pending suit, seeking enforcement of the alleged settlement agreement, and both sides moved for summary judgment on the counterclaim. Padilla argued that the letters between the parties' representatives constituted a written settlement agreement. Although acknowledging that the court could not render a consent judgment incorporating the terms of the settlement, as the LaFrances had revoked consent, he nonetheless contended that the court could enforce the settlement by summary judgment. The LaFrances countered that the parties did not have an enforceable agreement under Texas Rule of Civil Procedure 11, which requires agreements regarding pending suits to "be in writing, signed and filed with the papers as part of the record...." The LaFrances further argued that, even if an otherwise valid Rule 11 agreement existed, it could not be enforced since the LaFrances had revoked consent prior to any judgment being rendered on the agreement. The LaFrances also moved to sever the counterclaim.

After a hearing on May 1, 1992, the court orally ruled that an enforceable settlement agreement did not exist, granting the LaFrances' motion for summary judgment and denying Padilla's. The court also granted the motion for severance, noting on the docket that a final judgment would be granted to the LaFrances on the counterclaim. The court, however, did not sign a written judgment or order of severance at that time.

On June 11, 1992, Padilla filed a "Motion for Reconsideration on his Motion for Summary Judgment," raising the same arguments contained in his original motion for summary judgment and adding one additional argument.[3] Although this motion was apparently set for oral hearing on June 22,[4] there is no indication in the record or the briefs that any hearing occurred. On June 19, Padilla filed another motion, styled simply as a "Motion for Summary Judgment," setting forth essentially the same arguments contained in the motion for reconsideration. No oral hearing was held on this subsequent motion for summary judgment, and neither it nor the motion for reconsideration was submitted for a ruling on Harris County's submission docket. *See* Local Rule 3.3.2 of the Harris County District Courts. On October 19, 1992, the court signed an order granting the LaFrances' motion for summary judgment and denying Padilla's. This order referred only to the cross motions for summary judgment argued on May 1, mentioning neither Padilla's motion for reconsideration nor his later successive motion for summary judgment.[5] On November 20, 1992, the court signed an order severing Padilla's counterclaim and assigning it a new cause number, thus finalizing the earlier summary judgment.

Padilla appealed from this severed cause. The LaFrances moved the court of appeals to dismiss the appeal, contending that the transcript, which Padilla filed 82 days after the judgment became final on November 20, 1992, was untimely. Under Texas Rule of Appellate Procedure 54(a), the transcript must be filed within sixty days after judgment, or within 120 days if a timely motion

2. Shortly after refusing the settlement funds, Steidley sent another letter to Chandler contending that State Farm had acted in bad faith by not settling the case for the policy limits, demanding $2.75 million from Padilla and State Farm in extra-contractual damages.

3. The new argument was based on section 154.071(a) of the Texas Civil Practice and Remedies Code, which provides:

   If the parties reach a settlement and execute a written agreement disposing of the dispute, the agreement is enforceable in the same manner as any other written contract.

This section is contained in Title 7 of the Civil Practice and Remedies Code, regarding referral of cases to alternative dispute resolution.

4. The transcript contains a "Notice of Oral Hearing," filed by Padilla on June 12, indicating that the motion for reconsideration would be "presented to the court for ruling with an oral hearing" on June 22, 1992.

5. The court's order did, however, address section 154.071(a) of the Texas Civil Practice and Remedies Code, which was raised only in the two later motions.

for new trial or motion to modify the judgment has been filed. The court of appeals originally dismissed the appeal, but reinstated it on rehearing. The court concluded that Padilla's motion for rehearing of the trial court's oral summary judgment ruling was the equivalent of a motion for new trial, extending the appellate deadlines under Rule 54(a). 875 S.W.2d at 732.

As to the merits, the court of appeals concluded that the parties did not have an enforceable settlement agreement under Texas Rule of Civil Procedure 11. The court held that, under Rule 11, consent to the settlement agreement must exist at the time it is filed with the court. 875 S.W.2d at 734. Although not expressly deciding whether Steidley's April 23 letter constituted a signed writing sufficient under Rule 11, the court noted that the LaFrances had revoked any consent prior to that letter being filed with the court. *Id.* The court accordingly affirmed the trial court's summary judgment in favor of the LaFrances.

## II

■ We initially address the LaFrances' jurisdictional argument. They contend by cross-point that the court of appeals should have dismissed the appeal because Padilla failed to timely file the transcript.[6] We disagree.

An appellant must file the transcript in the court of appeals "within sixty days after the judgment is signed, or, if a timely motion for new trial or to modify the judgment has been filed by any party, ... within one hundred twenty days after the judgment is signed." Tex.R.App.P. 54(a). Padilla filed the transcript 82 days after the judgment became

final and appealable through severance.[7] The issue, therefore, is whether Padilla timely filed a motion for new trial or a motion to modify the judgment.

A motion for new trial "shall be filed prior to or within thirty days after the judgment or other order complained of is signed." Tex. R.Civ.P. 329b(a). A motion to modify the judgment must be filed within this same time period. Tex.R.Civ.P. 329b(g). Moreover, Texas Rule of Civil Procedure 306c directs that a motion for new trial filed before judgment "shall be deemed to have been filed on the date of but subsequent to the time of signing of the judgment the motion assails...." We conclude that, under the authority of these rules, Padilla's June 11 motion for reconsideration was the equivalent of a motion to modify the judgment, extending the appellate deadlines. These rules prevent the procedural trap that otherwise could occur if a party prematurely filed a motion that was intended to assail the final judgment. *See, e.g., Syn–Labs, Inc. v. Franz,* 778 S.W.2d 202, 205 (Tex.App.—Houston [1st Dist.] 1989, no writ); *Miller v. Hernandez,* 708 S.W.2d 25, 27 (Tex.App.—Dallas 1986, no writ). *Cf. Fredonia State Bank v. General American Life Ins. Co.,* 881 S.W.2d 279, 280–82 (Tex.1994) (motion for new trial filed after original judgment, but before amended judgment, was sufficient to preserve factual insufficiency points).

At the time Padilla moved for reconsideration, the trial court had orally rendered summary judgment for the LaFrances on the counterclaim and had orally ordered that the counterclaim be severed, indicating to the parties at the May 1 hearing that a final

6. Padilla argues that the LaFrances have waived this argument because they did not raise it in this Court by separate application for writ of error. Padilla relies on the requirement that a party who seeks a different and more favorable judgment in this Court than that rendered by the court of appeals must file his or her own application for writ of error, rather than merely raising the argument by a responsive cross-point. *See Donwerth v. Preston II Chrysler–Dodge, Inc.,* 775 S.W.2d 634, 639 n. 5 (Tex.1989); *Archuleta v. International Ins. Co.,* 667 S.W.2d 120, 123 (Tex. 1984). The LaFrances' cross-point, however, does not seek a different *and more favorable* judgment. Although a judgment of dismissal

would be different from the actual judgment of the court of appeals affirming the judgment of the trial court, the end results would be equally favorable. In either case, the trial court's summary judgment in favor of the LaFrances remains undisturbed. The LaFrances were thus entitled to raise the dismissal argument by cross-point.

7. Although the trial court signed the order granting summary judgment for the LaFrances on the settlement issue on October 19, 1992, it did not sever this issue until November 20, 1992. The latter date controls the appellate timetable.

judgment would be signed on Padilla's counterclaim. Although Padilla's motion for reconsideration was premature, it clearly assailed the court's final judgment. It thus qualifies as a premature motion to modify the judgment, extending the appellate timetable.

The LaFrances argue that Padilla's motion for reconsideration was of no effect because it was superseded by his subsequent "motion for summary judgment" filed eight days later. The LaFrances rely on *State v. Seventeen Thousand Dollars,* 809 S.W.2d 637 (Tex. App.—Corpus Christi 1991, no writ), where the court, in deciding whether the appellee had preserved a particular summary judgment ground in the trial court, held that "[a] substituted or amended motion for summary judgment supercedes and supplants the previous motion, which may no longer be considered." 809 S.W.2d at 639 (citing Tex. R.Civ.P. 65). Even if this holding is correct, an issue we do not decide, it does not support the LaFrances' position here. To fall within this rule, Padilla's June 19 motion for summary judgment would have to be considered an amended or substituted version of his motion for reconsideration. However, the June 19 summary judgment motion was not styled as an amended motion to reconsider, and it did not directly assail the trial court's earlier ruling, as did the motion for reconsideration. Further, if the later motion for summary judgment *was* actually an amendment to the motion for reconsideration, as the LaFrances seem to argue, it likewise would operate to extend the appellate timetable. Although we do not decide whether the later motion for summary judgment, filed after the trial court's oral rendition of judgment, in and of itself extended the appellate timetable, under the circumstances of this case this filing cannot negate the effect of the earlier motion for reconsideration.

The LaFrances also point out that Padilla's motion for reconsideration was filed under the original, rather than the severed, cause number. They note that the trial court's later written severance order designated certain documents to be included in the record of the severed counterclaim, but did not include the motion for reconsideration, and Padilla never requested that the severance

order be supplemented or modified. Because the motion for reconsideration was never actually filed under the severed cause number, the LaFrances contend that it cannot be considered in this appeal from the severed cause.

This argument is without merit. At the time Padilla filed the motion for reconsideration, there was no severed cause number, as the trial court had not yet signed a written order of severance. Further, the trial court's order granting summary judgment, which is the order Padilla's motion for reconsideration assailed, was also filed under the original cause number, as it likewise preceded the order of severance. After the trial court subsequently signed the order of severance, finalizing the summary judgment, Padilla filed a request for transcript under the severed cause number requesting that numerous pleadings, including his motion for reconsideration, be included in the appellate transcript. The transcript before us from the severed cause accordingly includes the motion for reconsideration. Under these circumstances, the motion for reconsideration operated to extend the appellate timetable in the severed cause. *See McRoberts v. Ryals,* 863 S.W.2d 450, 454–55 (Tex.1993); *Mueller v. Saravia,* 826 S.W.2d 608, 609 (Tex.1992).

For the foregoing reasons, we hold that Padilla timely filed the transcript. The court of appeals thus did not err in refusing to dismiss Padilla's appeal.

### III

Texas Rule of Civil Procedure 11 provides as follows:

> Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record.

This rule has existed since 1840 and has contained the filing requirement since 1877. *See Kennedy v. Hyde,* 682 S.W.2d 525, 526 (Tex.1984) (tracing the history of Rule 11). The rationale for the rule is straightforward:

Agreements of counsel, respecting the disposition of causes, which are merely verbal, are very liable to be misconstrued or forgotten, and to beget misunderstandings and controversies; and hence there is great propriety in the rule which requires that all agreements of counsel respecting their causes shall be in writing, and if not, the court will not enforce them. They will then speak for themselves, and the court can judge of their import, and proceed to act upon them with safety. The rule is a salutary one, and ought to be adhered to whenever counsel disagree as to what has transpired between them.

*Birdwell v. Cox,* 18 Tex. 535, 537 (1857). A settlement agreement must comply with Rule 11 to be enforceable. *Kennedy,* 682 S.W.2d at 528.[8]

The LaFrances argue that 1) the writings in this case do not evidence a binding agreement, 2) even if there was an agreement, it did not comply with Rule 11 because the LaFrances withdrew their consent before the writings were filed with the court, and 3) any agreement was further unenforceable because the LaFrances withdrew their consent before judgment was rendered on the agreement. We consider each of these arguments in turn.

### A

▮▮▮ Rule 11 requires settlement agreements to "be in writing." Although we have never articulated what is necessary to satisfy this "in writing" requirement, we may analogize to the statute of frauds, which requires certain contracts to be in writing. *See* Tex. Bus. & Com.Code § 26.01. To satisfy the statute of frauds, "there must be a written memorandum which is complete within itself in every material detail, and which contains all of the essential elements of the agreement, so that the contract can be ascertained from the writings without resorting to oral testimony." *Cohen v. McCutchin,* 565 S.W.2d 230, 232 (Tex.1978). The written memorandum, however, need not be contained in one document. *See Adams v. Abbott,* 151 Tex. 601, 254 S.W.2d 78, 80 (1952).

▮▮▮ These principles apply equally to Rule 11 agreements. Applying them here, we hold that the series of letters between Steidley, Bradshaw and Chandler are sufficient to constitute an agreement in writing satisfying Rule 11. Steidley's initial letter to Chandler offered to settle the case for the $40,000 policy limits, making clear that the offer could only be accepted by *payment of the money* by a specific deadline. It is undisputed that Padilla did not tender the $40,000 within that deadline. Where an offer prescribes the time and manner of acceptance, those terms must ordinarily be complied with to create a contract. *See Town of Lindsay v. Cooke County Elec. Cooperative Ass'n,* 502 S.W.2d 117, 118 (Tex.1973), *cert. denied,* 416 U.S. 970, 94 S.Ct. 1993, 40 L.Ed.2d 559 (1974). However, a different method of acceptance may be effectual where the "original offeror thereafter manifests his assent to the other party." *Id.* That was the case here. The later writings reflect that Steidley agreed to a modification of the terms of acceptance set out in the original letter.

Bradshaw's letter—faxed to Steidley on the afternoon of April 23—agreed to pay the $40,000 policy limits, specifically confirming a "settlement agreement" between the parties. That letter, however, noted uncertainty as to one detail, payment of the hospital lien, and requested guidance from Steidley. Steidley responded that same day with a letter indicating that plaintiffs would pay the hospital lien out of the settlement funds, specifically stating that "[t]his letter will confirm that the above referenced matter *has been settled* for all applicable policy limits...." (emphasis added). Steidley used this language, indicating a consummated settlement, notwithstanding that no checks had not yet been forwarded by Padilla. Steidley, therefore, assented to Padilla's alteration of the mode of acceptance set out in Steidley's original offer. Rather than requiring actual payment by a particular deadline, Steidley accepted Padilla's *agreement* to pay the policy limits as acceptance of his earlier offer. Moreover,

---

8. Because the primary purpose of Rule 11 is to require the parties to reduce their agreements to writing, the Court in *Kennedy* refused to enforce an oral settlement agreement.

the letters reflect all material terms of the agreement; i.e., Padilla agreed to pay $40,000 in settlement of all claims, and the LaFrances agreed to be pay the hospital lien out of those proceeds. We accordingly hold that the parties entered into a binding settlement agreement, evidenced by a writing sufficient to satisfy Rule 11.[9]

## B

■ Rule 11 requires settlement agreements to be filed "with the papers as part of the record." Padilla did not file any of the settlement letters until after the LaFrances had refused to accept the settlement checks tendered by Padilla. The court of appeals accordingly held that the agreement did not comply with Rule 11 because it was not filed until after the LaFrances had revoked their consent.

Although Rule 11 requires the writing to be filed in the court record, it does not say *when* it must be filed. The purpose of the rule—to avoid disputes over the terms of oral settlement agreements—is not furthered by requiring the writing to be filed before consent is withdrawn. As noted by the dissent below, "[t]o require the parties to immediately rush to the courthouse with a signed document in order to quickly comply with the requirements of Rule 11 before the other party reneges on his agreement goes against the grain of the policy in Texas jurisprudence which favors the settlement of lawsuits." 875 S.W.2d at 735. The purpose of the filing requirement, in the language of *Birdwell v. Cox*, is to put the agreement before the court so that "the court can judge of [its] import, and proceed to act upon [it] with safety." 18 Tex. at 537. This purpose is satisfied so long as the agreement is filed before it is sought to be enforced. Padilla met that requirement here by filing each of the settlement

letters with his motion for summary judgment on the counterclaim.

## C

Finally, the LaFrances argue that the settlement is unenforceable because they withdrew consent before judgment was rendered on the agreement. The LaFrances rely on *Kennedy v. Hyde*, where we held that "notwithstanding a valid Rule 11 agreement, consent must exist at the time an agreed judgment is rendered." 682 S.W.2d at 528. *See also Burnaman v. Heaton*, 150 Tex. 333, 240 S.W.2d 288, 291 (1951).

■ The LaFrances, however, confuse the requirements for an agreed judgment with those for an enforceable settlement agreement. Although a court cannot render a valid agreed judgment absent consent at the time it is rendered, this does not preclude the court, after proper notice and hearing, from enforcing a settlement agreement complying with Rule 11 even though one side no longer consents to the settlement. The judgment in the latter case is not an agreed judgment, but rather is a judgment enforcing a binding contract.

In *Burnaman*, for example, the plaintiff wanted to repudiate a settlement that her attorney had agreed to on the record in open court, claiming that she had not authorized such settlement. Although aware of the plaintiff's objection, the court subsequently rendered a consent judgment incorporating the terms of the settlement. We held that the consent judgment was improper since contemporaneous consent was lacking. "It is not sufficient to support the judgment that a party's consent thereto may at one time have been given; consent must exist at the very moment the court undertakes to make the agreement the judgment of the court." 240

---

9. The LaFrances argue that there is no summary judgment evidence that Bradshaw, who was not an attorney, was authorized to negotiate a settlement or enter a binding Rule 11 agreement on Padilla's behalf. We disagree. The record reflects that Chandler, who was Padilla's attorney, was the one who forwarded the LaFrances settlement offer to Bradshaw, and it was Chandler who procured the settlement checks from Bradshaw and tendered them to Steidley. Moreover,

Steidley knew that Bradshaw was negotiating on behalf of Padilla and that he was at least purporting to act as Padilla's agent. Under these circumstances, even if Bradshaw did not have actual authority to settle the lawsuit, Padilla was entitled to ratify Bradshaw's actions, thereby creating a binding agreement. *See* Restatement (Second) of Agency, § 87. Padilla clearly ratified the agreement by tendering the settlement funds and seeking enforcement.

S.W.2d at 291. In reversing the agreed judgment, however, we noted as follows:

> Since the judgment of the trial court is reversed, we cannot pass on the effect of the agreement made by the attorneys or the notation of that agreement on the docket. We can only say that the announcement of the agreement in open court and its notation on the docket cannot give it the force of a judgment. It follows that the reversal of the judgment should be without prejudice to the right of defendants to plead the agreement in bar of plaintiff's suit and without prejudice also to plaintiff's right to avoid the agreement by pleading that her attorney was without authority to make it. These are issues to be settled by the jury or the court in a trial of the case.

240 S.W.2d at 292. Similarly in *Quintero v. Jim Walter Homes, Inc.,* 654 S.W.2d 442 (Tex.1983), we held that the trial court erred by rendering an agreed judgment of dismissal based on a release signed by plaintiff because plaintiff did not consent to the judgment at the time it was rendered. We noted, however, that "our reversal of the judgment of dismissal is without prejudice to the rights of the Jim Walter Homes in its attempt to plead and prove an enforceable settlement agreement under the release." 654 S.W.2d at 444. *See also S & A Restaurant Corp. v. Leal,* 892 S.W.2d 855, 857 n. 1. (Tex.1995); *Cothron Aviation, Inc. v. Avco Corp.,* 843 S.W.2d 260, 263 (Tex.App.—Fort Worth 1992, writ denied); *Ortega–Carter v. American Int'l Adjustment Co.,* 834 S.W.2d 439, 442 (Tex.App.—Dallas 1992, writ denied); *Browning v. Holloway,* 620 S.W.2d 611, 614–15 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.); *Stewart v. Mathes,* 528 S.W.2d 116, 118 (Tex.Civ.App.—Beaumont 1975, no writ).

■ An action to enforce a settlement agreement, where consent is withdrawn, must be based on proper pleading and proof. *See Quintero,* 654 S.W.2d at 444; *Browning,* 620 S.W.2d at 615. In this case, for example, Padilla filed a counterclaim seeking enforcement of the parties' agreement, and both sides moved for summary judgment on that claim. As previously discussed, the summary judgment evidence established an enforceable settlement agreement as a matter of law. The trial court therefore should have granted Padilla's motion for summary judgment and enforced the agreement.

For the foregoing reasons, we reverse the judgment of the court of appeals and remand this cause to the trial court for further proceedings consistent with this opinion.

ENOCH, Justice, joined by GAMMAGE, Justice, dissenting.

Today the Court holds that a settlement agreement is an enforceable Rule 11 agreement despite the fact that it never complied with all requirements of the rule before the existence and terms of the agreement became disputed. But for this Court's prior opinion in *Kennedy v. Hyde,* 682 S.W.2d 525 (Tex.1984), I would agree that the settlement agreement in this case is enforceable as a binding contract between the parties regardless of whether it is ever filed as a Rule 11 agreement. *Kennedy,* however, engrafted the Rule 11 requirements on the substantive principles of contract law. In my view, *Kennedy,* unless overruled, compels us to conclude that the settlement agreement in this case is unenforceable because, although the agreement is otherwise enforceable as a binding contract, it did not comport with the requirements of Rule 11 at the time Padilla sought to enforce the agreement. I respectfully dissent.

In *Kennedy,* the parties reached an oral settlement agreement. The agreement was reduced to writing and signed by all but one defendant, Kennedy. The plaintiffs amended their pleadings to enforce the oral settlement agreement against Kennedy. *Kennedy,* 682 S.W.2d at 526. This Court reversed the judgment of the courts below enforcing the oral settlement agreement, holding that the oral settlement agreement was unenforceable under Rule 11 because the agreement was not in writing and signed by Kennedy. *Id.* at 530.

I begin by noting that *Kennedy* represents a significant departure from our Rule 11 jurisprudence and substantive contract law. Prior to *Kennedy,* this Court never held that to be enforceable as a contract, a settlement agreement must comply with Rule 11. In

*Williams v. Hollingsworth,* 568 S.W.2d 130, 131 (Tex.1978) and *Vickrey v. American Youth Camps, Inc.,* 532 S.W.2d 292 (Tex. 1976) (per curiam), this Court purportedly "strongly implied" that settlement agreements were subject to Rule 11. *Kennedy,* 682 S.W.2d at 528. The implication, if any, is neither strong nor persuasive. In *Williams,* the Court only held that a valid consent judgment cannot be rendered by a court when consent of one of the parties is lacking. *Williams,* 568 S.W.2d at 131. Because one party was not present or represented by counsel at the time an agreed judgment was rendered, that party had not consented to the agreed judgment. *Id.* at 132.

The reliance on *Vickrey* is even more dubious. In that case, the Court in a per curiam opinion simply recited in its statement of the facts that a settlement was dictated in open court pursuant to Rule 11. *Vickrey,* 532 S.W.2d at 292. One party appealed the judgment that had been rendered based on the dictated settlement on the grounds that it did not conform to the settlement that had been reached between the parties. *Id.* at 292. The Court reversed the judgment holding that a final judgment based on a settlement agreement must be in "strict or literal compliance" with that agreement. *Id.* Like the issue in *Williams,* the issue in *Vickrey* was whether the trial court had the power to render the judgment it did based on the settlement, not whether a settlement agreement is an otherwise enforceable settlement agreement absent compliance with Rule 11.

By reaching out to render settlement agreements subject to Rule 11, the Court engrafted new requirements onto the substantive law of contracts, thus exceeding the Court's rule-making authority. TEX.GOV'T CODE § 22.004. Section 22.004(a) grants this Court the full authority to make rules for practice and procedure in civil actions, "except that its rules may not abridge, enlarge, or modify the substantive rights of a litigant." *Id.* § 22.004(a). Under *Kennedy,* an oral settlement agreement, although otherwise enforceable at common law, becomes unenforceable unless made in open court, and thus made part of the court record. It is difficult to conceive of a clearer abridgment of the substantive rights of a litigant than to refuse to enforce a valid contract because the parties did not comply with a rule of procedure.

The Court recognized that its holding in *Kennedy* might abridge the substantive law of contracts, but dismissed this concern by concluding that the Legislature had sanctioned its interpretation of Rule 11 by failing to disapprove of the rule. *Kennedy,* 682 S.W.2d at 529. The Legislature's failure to disapprove of Rule 11, according to the Court, may be viewed as signifying its acquiescence in the Court's interpretations of Rule 11's predecessors. While this may be true, it is only true if the Court's interpretations of Rule 11's predecessors have subjected otherwise enforceable settlement agreements to Rule 11 and rendered such contracts unenforceable for failure to comply with the rule. None of the Court's prior interpretations have so held.

Nor is such an interpretation "presaged" by the Court's earlier interpretations in *Birdwell v. Cox,* 18 Tex. 535 (1857) or *Matthews v. Looney,* 132 Tex. 313, 123 S.W.2d 871 (1939). *See Kennedy,* 682 S.W.2d at 529. *Birdwell* simply involved an agreement to postpone trial until some depositions could be taken. *Birdwell,* 18 Tex. at 535–36. In *Matthews,* the parties in a will contest reached a settlement but before judgment, disputes arose concerning the terms of the settlement between the parties. *Matthews,* 123 S.W.2d at 871–72. Although the Court noted that the agreement had not been reduced to writing or rendered of record with the trial court, the Court held that the trial court lacked authority to enter a judgment because the terms were in dispute. *Id.* at 873. In other words, the parties had not consented to the terms of the settlement at the time they sought a judgment. *Matthews* simply stands for the correct proposition that a judgment may not be rendered based on a settlement if a party withdraws its consent prior to the judgment. Neither *Birdwell* nor *Matthews* justify the Court's action in *Kennedy.*

While I believe *Kennedy* is wrongly decided, it is the law and should either be followed or overruled in this case. My criticism of the Court is that it does neither. Assuming the

**464**

Court continues to adhere to the holding in *Kennedy*, Rule 11 requires that three conditions be met before an agreement will be enforceable: (1) a writing, (2) that is signed, (3) and that has been filed with the court. *London Market Cos. v. Schattman*, 811 S.W.2d 550, 552 (Tex.1991) (per curiam). Once the existence or terms of such an agreement becomes disputed, it is unenforceable *unless* it comports with all three of these requirements. *Id.; Kennedy*, 682 S.W.2d at 530. Accordingly, if a purported agreement is in writing and has been signed, but becomes disputed before it has been filed with the court, the agreement is unenforceable under Rule 11. *See Kennedy*, 682 S.W.2d at 530 (oral agreement was unenforceable at the moment its existence was disputed in pleadings).

Recognizing that *Kennedy* hangs like an albatross around its neck, the Court deals with the filing requirement of Rule 11 in such a way as to, in effect, hold that an agreement need only be in writing and signed to be enforceable. According to the Court, the parties need not file an agreement with the court except and until one party disputes the existence or terms of the agreement—filing of the document is a mere technicality. Yet the predecessor to Rule 11, Rule 47, was amended in 1877 to specifically require that agreements be filed with the court to be enforceable. 47 Tex. 597, 625 (1877). In light of this fact, there can be little justification for today's judicial revision. An amendment to a rule must be presumed to have made some change in existing law and the Court must endeavor to give some effect to the amendment. *American Surety Co. v. Axtell Co.*, 120 Tex. 166, 36 S.W.2d 715, 719–20 (1931). To the contrary, the Court effectively eliminates the filing requirement from Rule 11.

Moreover, the Court's construction trivializing the filing requirement arguably defeats the purposes of Rule 11. Rule 11 ensures (1) that agreements of counsel which affect the interest of their clients not be left to the fallibility of human recollection, *Wyss v. Bookman*, 235 S.W. 567, 569 (Tex.Comm'n App.1921, holding approved); and (2) that agreements themselves not become sources of controversy impeding resolution of suits.

*Kennedy*, 682 S.W.2d at 530. In addition, Rule 11 also operates to prevent the trial judge from having to place the parties' attorneys on the stand and determine which one is telling the truth. *See Fidelity & Casualty Co. v. McCollum*, 656 S.W.2d 527, 529 (Tex. App.—Dallas 1983, writ ref'd n.r.e.). Stated another way, the significance of Rule 11 is to formalize the procedures for entering into agreements concerning a pending lawsuit so that the court can extricate itself from controversies ancillary to the underlying litigation. The filing element, if it has any purpose at all, surely is designed to make the parties focus on an agreement and recognize that not only have the terms of the agreement been memorialized in writing but also that they have the imprimatur of a court record. The filing requirement thus adds to the formality of the process and reduces uncertainty and the likelihood that the agreements will become a source of controversy distracting the court and the parties from the case at hand.

I suspect that the Court reduces the filing requirement to a matter of little consequence because it is absurd to hold that a contract would not be enforceable simply because it has not been filed with the court. Yet if we are going to continue to insist that our substantive contract law be modified by Rule 11, we should at least be consistent in our readings. To be enforced, a settlement agreement must be in writing, signed, and filed at the time either its existence or the terms of the agreement become disputed. *Kennedy*, if correct, compels us to conclude that the agreement in this case is unenforceable because it became disputed before it complied with the Rule 11 filing requirement. Because the Court chooses not to address *Kennedy*, it takes the questionable route of trivializing the filing requirement of Rule 11 to the point of nonexistence. If there is value to Rule 11's requirement that an agreement be on file with the Court, then that value should not be destroyed. If there is no value to the mere filing of an agreement, then the Court should amend Rule 11 to delete the requirement. I dissent.