NO. 07-10-00398-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JUNE 1, 2012

_____

CARBURANTE LAND MANAGEMENT, LLC, APPELLANT

v.

DILLARD E. HOPKINS, JR., MATTHEW CRUM AND
TRAVIS H. HOPKINS, APPELLEES

_____

FROM THE 153RD DISTRICT COURT OF TARRANT COUNTY;

NO. 153-248219-10; HONORABLE KEN CURRY, JUDGE

_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Carburante Land Management, LLC ("CLM"), appeals an order granting appellees, Dillard E. Hopkins, Jr. ("Eddie"), Matthew Crum, and Travis H. Hopkins, summary judgment on the basis of a settlement agreement reached by the parties and entered into the record on October 19, 2009. We will affirm the judgment of the trial court.

## Background

CLM is engaged in the business of acquiring minerals by purchase or lease. In furtherance of that business, CLM hired Matthew Crum as legal counsel, and Travis Hopkins as a land man responsible for mineral acquisitions. When each was hired, they were required to sign consulting agreements which included provisions prohibiting them from competing with CLM and imposing obligations upon them regarding CLM's confidential and proprietary information. After natural gas prices declined, CLM began having difficulty in meeting its financial obligations, including payments owed to Matthew Crum and Travis Hopkins under the consulting agreements.

To acquire capital to fund closing on two projects being undertaken by CLM, Travis Hopkins approached his father, Eddie Hopkins, to negotiate a short-term loan to CLM. The parties reached a deal. Eddie Hopkins loaned CLM $300,000 to be repaid in 12 months with 15 percent annual interest. Securing the loan, CLM pledged its interest in Pleasant Ridge Partners, LLC.

In the summer of 2009, Matthew Crum and Travis Hopkins filed suit against CLM seeking unpaid compensation under the consulting agreements. In a separate action, Eddie Hopkins filed suit against CLM for foreclosure on the security for the loan on the basis that CLM had defaulted on the loan.

On October 15, 2009, CLM filed suit against appellees. As part of this action, CLM sought a temporary restraining order to prevent Eddie Hopkins's foreclosure action, and to enjoin Matthew Crum and Travis Hopkins from using or disseminating

2

CLM's confidential and proprietary information. A hearing on CLM's application for temporary restraining order was scheduled for October 19, 2009.

Prior to this scheduled hearing, however, the parties reached an agreement settling all three of the pending cases. The agreement was memorialized by a letter that was signed by counsel for all parties and admitted into evidence as an exhibit, and additional terms of the agreement were read into the record by CLM's counsel. After this settlement agreement was presented to the trial court, it stated, "[t]hen the Court at this time accepts the agreement of the parties, enters it into the records of the Court and renders judgment accordingly. Who will be drafting the documents?"

One of the provisions of the letter memorializing the agreement provides that,

10. If this offer is accepted, I [Eddie Hopkins's counsel] will prepare a comprehensive Compromise and Settlement Agreement containing customary language regarding the breadth of the releases, binding effect, entirety clause, governing law, severability, specific performance, effective date, time of the essence, confidentiality, no admissions, etc.

In accordance with this provision, Eddie Hopkins's counsel prepared a draft of a comprehensive Compromise and Settlement Agreement and forwarded it to counsel for CLM for approval. However, CLM refused to sign this comprehensive Compromise and Settlement Agreement. CLM's correspondence regarding the comprehensive agreement evinces that it was not dissatisfied with the way that the anticipated formalities were added to the parties' agreement, but rather that CLM wanted to renegotiate the terms of the settlement agreement to include additional terms that were not addressed by the settlement agreement read into the record on October 19, 2009. Appellees refused to renegotiate the terms of the settlement agreement and, as a result, no comprehensive Compromise and Settlement Agreement was ever executed.

3

Appellees subsequently filed in the trial court a motion to enforce the settlement agreement. By letter, the trial court stated that the settlement "agreement entered into by the parties is simply too vague to allow the court to draft a settlement agreement for the parties." Rather, the trial court ordered the parties to mediation. Nothing in the record establishes whether the parties participated in mediation.A few months later, appellees filed a motion for summary judgment which contended that there was no genuine issue of material fact as to the finality and enforceability of the October 19, 2009 settlement agreement. After considering appellees' motion and summary judgment evidence as well as CLM's response and evidence, the trial court granted appellees' summary judgment motion. In a letter informing the parties of its ruling on appellees' motion, the trial court explained that its earlier indication that the settlement agreement was too vague for the trial court to draft a settlement agreement for the parties was intended only to indicate that the trial court would not impose the formalities that the parties had agreed to include in a comprehensive Compromise and Settlement Agreement by judgment. The trial court's order granting summary judgment accurately reflects the terms of the settlement agreement announced in open court on October 19, 2009. Following the trial court's entry of summary judgment, CLM filed a motion for new trial. The trial court denied CLM's motion, and this appealed followed.

By five issues, CLM challenges the trial court's entry of summary judgment. By its first issue, CLM contends that there was no meeting of the minds on all material terms in the October 19, 2009 settlement agreement. CLM's second issue contends that its counsel lacked authority to enter into the settlement agreement. By its third issue, CLM contends that it repudiated the settlement agreement. CLM's fourth issue

4

contends that the settlement agreement is too vague to be subject to judicial interpretation and enforcement. Finally, by its fifth issue, CLM contends that Matthew Crum's and Travis Hopkins's continued use of confidential and proprietary information constitutes a breach of the settlement agreement, and a failure of consideration.

## Standard of Review

By its appeal, CLM challenges the trial court's grant of summary judgment in favor of appellees. In reviewing a summary judgment, the reviewing court must apply the following, well-established standards: (1) the movant for summary judgment has the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the non-movant, and any doubts resolved in its favor. Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985).

To prevail on a motion for summary judgment, the movant must conclusively establish the absence of any genuine issue of material fact and that he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). Once the movant has established a right to summary judgment, the nonmovant has the burden to respond to the motion, and present to the trial court any issues that would preclude summary judgment. Barbouti v. Hearst Corp., 927 S.W.2d 37, 64 (Tex.App.--Houston [1st Dist.] 1996, writ

denied) (op. on reh'g en banc); see City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).

Issue One – Meeting of the Minds

By its first issue, CLM contends that there was no meeting of the minds between the parties on all material terms to be included in the October 19, 2009 settlement agreement. Specifically, CLM challenges the breadth of the confidential information which Matthew Crum and Travis Hopkins were required to return and cease using. In addition, CLM contends that there was no meeting of the minds with regard to the manner of notice of default and the duration of the opportunity to cure, the monetary credit to be afforded CLM in the event of an automatic surrender of collateral, and the absence of a definitive, written settlement agreement. Appellees respond contending that all material terms were included in the settlement agreement.

For a contract to be binding, the parties to the contract must have a meeting of the minds. Advantage Physical Therapy, Inc. v. Cruse, 165 S.W.3d 21, 25-26 (Tex.App.—Houston [14th Dist.] 2005, no pet.); Williford Energy Co. v. Submergible Cable Servs., Inc., 895 S.W.2d 379, 384 (Tex.App.—Amarillo 1994, no writ). Such a meeting of the minds must occur with respect to the subject matter of the agreement, as well as all of the essential terms of the agreement. Bryant v. Pennington, 346 S.W.2d 367, 368 (Tex.Civ.App.—Amarillo 1961, no writ).

Likewise, a settlement agreement must contain all the essential terms of the settlement. See Padilla v. LaFrance, 907 S.W.2d 454, 460 (Tex. 1995). For a settlement agreement to be enforceable, it must be in writing, signed, and filed with the

6

papers as part of the record, or made in open court and entered of record. <u>Id</u>. at 459 (quoting TEX. R. CIV. P. 11). Further, the settlement agreement must be complete within itself in every material detail so that the contract can be ascertained from the writing, or record, without resort to oral testimony. <u>Id</u>. at 460.

In the present case, the settlement agreement between the parties includes a two-page typewritten agreement, which also contains certain handwritten additions, as well as additional provisions that were orally presented in open court and made part of the record. <u>See</u> <u>id</u>. (settlement agreement may be comprised of more than one document). The record makes clear that CLM's attorney represented this agreement as resolving the parties' pending disputes:

> Your Honor, I think you'll be happy to know not only have we resolved I think the issues with regard to the order, but also resolving all matters in dispute in the underlying litigation as well as possibly resolving another case pending in Judge Walker's court [referring to Matthew Crum and Travis Hopkins's suit for unpaid compensation under their consulting agreements].
>
> We've agreed to resolve our complaints between the respective parties pursuant to the terms and conditions set forth on Defendant's Exhibit 1 [the two-page written agreement]. We'll allow that document to speak for itself.

CLM's attorney then read certain additional terms into the record in open court. Specifically, these additional terms required Matthew Crum and Travis Hopkins to return a financial model developed by CLM and all title documents relating to the Walking T unit, and to sign an affidavit stating that they have returned the financial model and title documents and will not use or disseminate this information in the future. In addition, the oral portion of the agreement required Matthew Crum and Travis Hopkins to withdraw

7

from participation in the acquisition of any mineral assets in the Walking T, Eagleford, or Rayburn units.

Essentially, the settlement agreement reached by the parties on October 19, 2009, will result in all parties dismissing their pending litigation; CLM will pay Matthew Crum and Travis Hopkins $74,970 as unpaid compensation; CLM will pay Eddie Hopkins $345,000 in repayment of the loan; in the event of a 15-day default on the loan, the Pleasant Ridge Partners, LLC, collateral will automatically transfer to Eddie Hopkins; and Matthew Crum and Travis Hopkins will return specified confidential information, as identified in open court, and cease participation in certain projects, also specifically identified in open court.

It is CLM's contention that the settlement agreement is not enforceable because there was no meeting of the minds in regard to certain essential terms of the agreement. Specifically, CLM contends that there was no meeting of the minds with regard to the breadth of the confidential information that appellees must return, the manner of notice of loan default and the duration of the opportunity to cure, the monetary credit to be afforded CLM in the event of an automatic surrender of collateral, and the absence of a definitive, written settlement agreement. Taking each of these in turn, we conclude that none are essential terms of the settlement agreement.

CLM's contention regarding the breadth of the confidential information to be covered by the settlement agreement is that it intended that Matthew Crum and Travis Hopkins be precluded from using all information identified as proprietary and confidential in its petition. It indicates that the manifestation of this intent can be seen

by reviewing CLM's Verified Original Petition. However, the very purpose of a settlement agreement is for parties to a pending dispute to compromise as to the relief it sought by the litigation. See Kerrville HRH, Inc. v. City of Kerrville, 803 S.W.2d 377, 388 (Tex.App.—San Antonio 1990, writ denied) ("A compromise and settlement is the conclusion of a disputed or unliquidated claim through a contract in which the parties agree to mutual concessions in order to avoid resolving their controversy through litigation."). The plain language of the settlement agreement specifically identifies the confidential information which Matthew Crum and Travis Hopkins were required to return to CLM. Nothing in the settlement agreement incorporates CLM's pleading allegations by reference nor does the agreement require the return of "all" of CLM's confidential information.

Next, CLM contends that there was no meeting of the minds regarding the manner of notice required and the duration of the opportunity to cure in the event of CLM's default on the loan repayment to Eddie Hopkins. On the two-page written agreement, beside the provision for automatic forfeiture of collateral in the event of CLM's default on the loan, "Notice and opportunity" was handwritten. We agree with CLM that this was a negotiated addition to the terms of the settlement agreement. However, we do not agree that the lack of specifics regarding the manner of notice and duration of opportunity to cure are essential terms to the settlement agreement. Whether the manner of notice or duration of opportunity to cure was reasonable would

be an issue to be decided on a claim of breach of the settlement agreement rather than an essential term of the settlement agreement.[1]

CLM also contends that there was no meeting of the minds regarding the amount of monetary credit that it would be afforded in the event of the automatic surrender of the collateral for its loan from Eddie Hopkins. However, nothing in the settlement agreement addresses this concern. CLM contends, in its supplemental response to appellees' motion to enforce settlement agreement, that an automatic surrender of collateral is generally given in full and complete satisfaction of the underlying debt. As such, Eddie Hopkins would take the collateral in full and complete satisfaction of the debt. Thus, in the absence of an express provision in the settlement agreement to the contrary, the automatic surrender of the collateral would fully and completely satisfy the debt. In any event, the absence of an express provision changing the value of collateral that is presumed is not an essential term of the settlement agreement.

Finally, it is CLM's contention that the lack of a definitive, written settlement agreement is evidence of a lack of a meeting of the minds between the parties. According to CLM, the language of paragraph 10 of the written portion of the settlement agreement[2] constituted an agreement to continue negotiation toward a final settlement

---

[1] In CLM's supplemental response to appellees' motion to enforce settlement agreement, CLM indicated that it would be agreeable to "five (5) business days notice and opportunity to cure."

[2] While quoted above, as a reminder, paragraph 10 of the written portion of the settlement agreement provides,

> 10. If this offer is accepted, I [Eddie Hopkins's counsel] will prepare a comprehensive Compromise and Settlement Agreement containing customary language regarding the breadth of the releases, binding effect,

agreement. It is the lack of this subsequent formalization of the settlement upon which CLM bases many of its contentions addressed above. However, we construe the language used in paragraph 10 to establish that the "comprehensive Compromise and Settlement Agreement" that was to be entered into by the parties was not intended to add any essential terms to the settlement and, certainly, was not intended to allow further negotiation regarding the essential terms of the settlement reached on October 19, 2009. The preparation of a comprehensive settlement agreement was conditioned on CLM's acceptance of appellees' settlement offer as opposed to the preparation of a comprehensive settlement agreement being a condition of settlement. See Lerer v. Lerer, No. 05-02-00124-CV, 2002 Tex.App. LEXIS 8371, at *9-10 (Tex.App.—Dallas Nov. 26, 2002, pet. denied); Hardman v. Dault, 2 S.W.3d 378, 381 (Tex.App.—San Antonio 1999, no pet.). Thus, the preparation of a written, comprehensive settlement agreement did not arise under the October 19, 2009 settlement agreement until that settlement agreement was accepted by CLM. Further, the use of the phrase "customary language" as identifying the additional provisions to be added in the comprehensive settlement agreement evinces that there was no intent that the parties needed to negotiate further. The term "customary" means "ordinary; usual; common." BLACK'S LAW DICTIONARY 268 (6th Ed. 1991). Thus, the comprehensive settlement agreement was to include language that is ordinary, usual, and common to settlement agreements regarding those subjects specified in paragraph 10. The use of the phrase "customary language" is an indication that the parties did not intend to negotiate further before entering a comprehensive settlement agreement. In fact, the manifestation that

---

entirety clause, governing law, severability, specific performance, effective date, time of the essence, confidentiality, no admissions, etc.

11

such terms would be included by the use of "customary language" indicates that the parties did not view the inclusion of these terms to be essential to the settlement.

After considering each of the terms CLM claims to have been essential to the October 19, 2009 settlement agreement and finding none of these to be essential, we overrule CLM's first issue.

Issue Two – Authority of CLM's Counsel to Agree

By its second issue, CLM contends that its counsel did not have authority to enter into the October 19, 2009 settlement agreement on CLM's behalf. Appellees respond by contending that CLM failed to raise the issue of its counsel's authority before the trial court and, therefore, it has waived the issue. We note, however, that CLM did expressly raise the issue of counsel's lack of authority in its motion for new trial, which was overruled by the trial court.

The attorney-client relationship is one of agent and principal, and the acts of the former ordinarily binds the latter. Breceda v. Whi, 187 S.W.3d 148, 152 (Tex.App.—El Paso 2006, no pet.) (citing Tex. Emp'rs Ins. Ass'n v. Wermske, 162 Tex. 540, 349 S.W.2d 90, 93 (Tex. 1961)). Generally, every reasonable presumption is to be indulged to support a settlement agreement made by a duly employed attorney. Ebner v. First State Bank of Smithville, 27 S.W.3d 287, 300 (Tex.App.--Austin 2000, pet. denied); Cleere v. Blaylock, 605 S.W.2d 294, 296 (Tex.Civ.App.--Dallas 1980, no writ). The most important presumption of such an agency relationship is that the agent acts in accordance with the wishes of the principal. Breceda, 187 S.W.3d at 152. However, when the evidence reveals that the attorney did not have the client's authority to agree,

the agreement will not be enforced.  Id.; Ebner, 27 S.W.3d at 300; Cleere, 605 S.W.2d at 296.  Thus, the presumption of authority of the attorney is a rebuttable one.  Breceda, 187 S.W.3d at 152.

CLM contends that its November 3, 2009 comments to the proposed comprehensive settlement agreement prepared by appellees is evidence that CLM's counsel did not have authority to enter into the October 19, 2009 settlement agreement. Specifically, CLM indicates that the statement that Matthew Crum and Travis Hopkins "will return to [CLM] all of [CLM's] Proprietary and Confidential Information . . . in their possession" establishes that its counsel lacked authority to settle the case for anything less than the return of all of CLM's confidential information.  However, the language immediately following this statement in the comment letter mirrors the language that was read into the record on October 19, 2009,

> [T]hey will return to [CLM] all copies, in whatever format, of what we've referred to as the Walking T title documents or title information, which includes all the underlying source documents, a summary of the title, a title runsheet, and a Vizio flowchart of all the title information.

As such, it appears that these comments reiterate the terms of the October 19, 2009 settlement agreement rather than clearly indicate that CLM's counsel lacked authority to agree to the October 19, 2009 settlement agreement.

Further, while sufficient to preserve the issue for appellate review, we find it significant that CLM did not clearly assert its contention that its counsel lacked authority to agree to the October 19, 2009 settlement agreement until it filed its motion for new

13

trial after the trial court granted summary judgment in favor of appellees.[3] By its motion for new trial, CLM contends that its counsel did nothing more than approve the form of the agreement, rather than its substance. However, this contention is belied by counsel's signature on the written portion of the settlement agreement indicating that it was "accepted." Further, counsel stated, on the record, that, "We've agreed to resolve our complaints between the respective parties pursuant to the terms and conditions set forth on Defendant's Exhibit 1. We'll allow that document to speak for itself." Clearly, such a statement evinces an acceptance of both the form and substance of the settlement agreement. Furthermore, in its Response to Defendants' Motion to Enforce Settlement Agreement and Motion for Damages, which was filed on December 14, 2009, CLM stated, "[o]n the morning of October 19, 2009, the parties did meet for the hearing and rather than the Court considering the Petition, the Parties agreed upon the terms and conditions of an agreement resolving all matters between them" (emphasis added). Clearly, the evidence contained within the record in this case fails to overcome the presumption that counsel had the authority to accept the October 19, 2009 settlement agreement.

For the foregoing reasons, we conclude that the evidence fails to raise a genuine issue of material fact regarding counsel's authority to enter into the October 19, 2009 settlement agreement. Consequently, we overrule CLM's second issue.

Issue Three – Repudiation of Settlement Agreement

---

[3] We note, as pointed out by appellees, that a claim of lack of authority to execute any written instrument must be verified by affidavit. See TEX. R. CIV. P. 93(7). While CLM cites Zachary M. Stephens's affidavit as evidence of counsel's lack of authority, nothing in this affidavit expressly denies counsel's authority to enter into the October 19, 2009 settlement agreement.

14

By its third issue, CLM contends that it repudiated the October 19, 2009 settlement agreement. Appellees respond, contending that CLM failed to raise this repudiation argument before the trial court and, therefore, this issue has been waived.

A party may revoke its consent to a settlement agreement at any time before judgment is rendered on the agreement. S & A Rest. Corp. v. Leal, 892 S.W.2d 855, 857 (Tex. 1995) (per curiam). However, the repudiating party must effectively communicate its withdrawal of consent to the trial court. Baylor Coll. of Med. v. Camberg, 247 S.W.3d 342, 346 (Tex.App.—Houston [14th Dist.] 2008, pet. denied). "The proper inquiry is whether the information in the trial court's possession is clearly sufficient and of such a nature as to put the court on notice that a party's consent is lacking. . . ." Id. (quoting Sohocki v. Sohocki, 897 S.W.2d 422, 424 (Tex.App.—Corpus Christi 1995, no writ)).

A review of the record reveals that CLM never effectively communicated its withdrawal of consent to the trial court. It is clear that CLM consistently argued for a favorable construction of the October 19, 2009 settlement agreement, but nowhere in the record did CLM clearly place the trial court on notice that it did not consent to the October 19, 2009 settlement agreement. In fact, in its Supplemental Response to Defendants' Motion to Enforce Settlement Agreement, CLM requested the trial court enter a Take Nothing Judgment on the basis that all claims and causes of action between the parties had been resolved by a settlement agreement reached on October 19, 2009.

Because any repudiation of consent for the October 19, 2009 settlement agreement was insufficiently clear to put the trial court on notice that CLM had withdrawn its consent to the settlement agreement, we overrule CLM's third issue.

Issue Four – Vagueness of Settlement Agreement

By its fourth issue, CLM contends that the October 19, 2009 settlement agreement is too vague to be enforceable. Appellees respond contending that the settlement agreement contains all essential terms, and is sufficiently certain to be enforceable by the trial court. CLM's specific argument regarding the alleged vagueness of the settlement agreement is based on the omission of the same terms argued by CLM in Issue One. We have previously addressed these terms above, and concluded that none are essential to the enforcement of the settlement agreement.

While not specifically addressed by CLM's argument of its fourth issue, we do note the January 8, 2010 letter of the trial court, which states that, "[a]fter consideration, it is apparent that the agreement entered into by the parties is simply too vague to allow the court to draft a settlement agreement for the parties." However, by letter dated June 18, 2010, the trial court clarified the intent of its statement when it said,

> It appears from the Plaintiff's submission that they are under the mistaken impression that I ruled the settlement agreement placed on the record to be vague and unenforceable. The intent of my ruling was to inform the parties that I thought it inappropriate for the court to draft contractual clauses regarding "…breadth of the releases, binding effect, entirety clause, governing law, severability, specific performance, effective date, time of the essence, confidentiality, no admissions…" The gist of the prior enforcement hearings, as I understood the same, was that the court would cause creation of the final settlement papers. My ruling letter regarding the prior motion to enforce specifically referenced a drafting of a settlement agreement by the court.

16

The trial court's indication that it cannot supply terms to the settlement agreement that were not specifically agreed to by the parties is a correct statement of the law. See Chisholm v. Chisholm, 209 S.W.3d 96, 98 (Tex. 2006) (per curiam); Baylor Coll. Of Med., 247 S.W.3d at 346. However, as addressed in our analysis of Issue One above, the omission of these nonessential terms did not affect the enforceability of the settlement agreement. See Padilla, 907 S.W.2d at 460.

Because we conclude that the October 19, 2009 settlement agreement is sufficiently specific to be enforced, we overrule CLM's fourth issue.

Issue Five – Breach of Settlement Agreement and Failure of Consideration

By its fifth issue, CLM contends that Matthew Crum and Travis Hopkins have breached the October 19, 2009 settlement agreement, and that this breach constitutes a failure of consideration. However, CLM's entire contention depends upon its construction of the settlement agreement being accepted by this Court. As addressed above, the settlement agreement reached by the parties did not address the Range Resource data and, therefore, Matthew Crum's and Travis Hopkins's continued use of this information is not a breach of the settlement agreement, and, certainly, is not a failure of consideration.

We overrule CLM's fifth issue.

Conclusion

Having overruled each of CLM's issues, we affirm the trial court's July 8, 2010 Order on Defendants' Motion for Summary Judgment.


Mackey K. Hancock
Justice