# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-20379

Consolidated with No. 14-20626

WILLIAM SCOTT,

Plaintiff - Appellee

v.

BRAD LIVINGSTON, Texas Department of Criminal Justice Executive
Director,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

October 23, 2015

Lyle W. Cayce
Clerk

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:09-CV-3991

Before HIGGINBOTHAM, JONES, and SMITH, Circuit Judges.

Edith H. Jones, Circuit Judge:*

William Scott ("Scott"), a Jehovah's Witness and a prisoner then
incarcerated at the Texas Department of Criminal Justice's ("TDCJ")
Huntsville Unit, filed a *pro se* complaint against TDCJ alleging that he was
unconstitutionally and statutorily deprived of sufficient access to religious
services. The district court interpreted his complaint as raising causes of

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 12-20379
Cons. w/ No. 14-20626

action under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and the First Amendment. During the course of litigation, Scott was transferred from TDCJ's Huntsville Unit to the Hightower Unit where he was enrolled in a nine-month treatment program, after which he was eligible for parole. Though he was released on parole, he later violated the terms of that parole and was re-incarcerated at the Powledge Unit. During his period of freedom on parole, Scott entered into settlement negotiations with TDCJ and settled his claims in this lawsuit. The district court did not enforce the agreement. The district court instead reached the merits and held that TDCJ violated Scott's rights. On appeal TDCJ raises two threshold issues, arguing that Scott's claims were mooted by his transfer from the Huntsville Unit to the Hightower Unit and that Scott agreed to a binding settlement agreement. Because Scott effectively settled his claims with TDCJ, we VACATE the district court's judgment and REMAND to the district court with instructions to enforce the February 2013 settlement agreement and DISMISS Scott's case.

## DISCUSSION

"Following a bench trial, we review the district court's conclusions of law *de novo* and its factual findings for clear error." *Cerda v. 2004-EQR1 L.L.C*, 612 F.3d 781, 786 (5th Cir. 2010). On appeal, TDCJ argues that the clear language of the parties' February 2013 settlement agreement decisively resolves any question about whether Scott settled his claims. That language provides, in pertinent part, "I hereby agree to a full and final-settlement of the above-referenced matter upon delivery of the sum of $3,000.00 by Defendant." Additionally, Scott attested that "Defendant will be entitled to a signed release and dismissal with prejudice of all my claims and costs as Plaintiff herein."

No. 12-20379
Cons. w/ No. 14-20626

Texas law governs the interpretation of this settlement agreement. Further, because "[a] settlement agreement is a contract," Texas contract law guides our interpretation. *White Farm Equip. Co. v. Kupcho*, 792 F.2d 526, 529 (5th Cir. 1986). Under Texas law, a settlement agreement must be in writing, signed, and included as part of the record, or made in open court and entered on the record to be enforceable. TEX. R. CIV. PR. 11. A settlement that contains all "essential terms" is considered a binding settlement, while an agreement omitting essential terms is not binding and is merely an agreement to agree. *Gen. Metal Fabricating Corp. v. Stergiou*, 438 S.W.3d 737, 744 (Tex. App.—Houston [1st Dist.] 2014). Essential terms are those that, based on case-specific inquiry, the parties "would reasonably regard as vitally important elements of their bargain." *Id.* at 744, 746.

The February 2013 settlement agreement is in writing, signed by the parties, and was entered into the district court record. Additionally, it includes a price term and a release of claims, which Texas law indicates as the essential components of settlement agreements. *See Padilla v. LaFrance*, 907 S.W.2d 454, 460-61 (Tex. 1995); *Stergiou*, 438 S.W.2d at 745; *CherCo Props., Inc. v. Law, Snakard & Gambill, P.C.*, 985 S.W.2d 262, 266 (Tex. App.—Fort Worth 1999). Therefore, the February 2013 settlement agreement is binding under Texas law.

Scott raises a welter of arguments, none of which is persuasive, in an effort to overcome the plain language of the agreement. First, he contends that he did not intend to be bound by the agreement because he believed he was signing a preliminary agreement to agree, not a final settlement agreement. Whether the parties had a meeting of the minds and intended to be bound, however, is determined by an "objective standard of what the parties said and

No. 12-20379
Cons. w/ No. 14-20626

did, not on their subjective state of mind." *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex. App.—San Antonio 1999). Here, the language contained in the agreement is straightforward and clear: Scott agreed to release his claims against TDCJ in exchange for $3,000. Moreover, the agreement contains all of the essential terms and is therefore a final and binding settlement agreement, not simply an agreement to agree. Because the terms are clear and unambiguous, we are limited to the objective intent of the parties as expressed in the language of the agreement, and we may not probe into Scott's subjective intentions.

Second, Scott argues that TDCJ did not intend to be bound because: the document signed was an affidavit, TDCJ attorneys' countersignatures were prefaced with the word "witnessed," and the attorneys did not have final authority to approve the settlement, which required approval by the Attorney General, Governor, and Comptroller of Texas. Scott cites no case law supporting the novel proposition that a settlement agreement written as an affidavit negates contractual intent. Similarly, that the TDCJ attorneys' signatures were prefaced with the term "witnessed" is not enough to overcome the clear language of the agreement and cast doubt upon TDCJ's intention to be bound. Additionally, the conditional language in the settlement agreement indicates that the requirement of approval of the Attorney General, Governor, and Comptroller was a condition precedent to the contract's effectiveness, *Cedyco Corp. v. PetroQuest Energy, LLC*, 497 F.3d 485, 488 (5th Cir. 2007), rather than evidence of lack of intent to be bound. Thus, the condition precedent in no way negates TDCJ's intention to be bound.

Finally, Scott contends that the agreement did not contain all of the material terms because he was not given the ability to review TDCJ's new

4

No. 12-20379
Cons. w/ No. 14-20626

administrative directive concerning religious worship practices of inmates and because the agreement did not specify the precise manner in which he would be paid. Nothing in the agreement, however, specifies that these two terms were part of the settlement. When interpreting a valid contract, a court must seek to "ascertain the true intentions of the parties as expressed in the instrument" by examining the writing to determine "whether it is possible to enforce the contract as written, without resort to parol evidence." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). If the contract can be given a "definite or certain legal meaning," it is unambiguous; for enforcement purposes, the court is limited to the plain language in the four corners of the document. *Addicks Servs. v. GCP-Bridgeland, LP*, 596 F.3d 286, 294 (5th Cir. 2010) (citing *J.M. Davidson*, 128 S.W.3d at 229). The plain language of this settlement agreement is clear, complete, and unambiguous. We may not graft additional terms onto it.

Because Scott settled his claims with TDCJ, his claims have been rendered moot. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 192 (2000) (noting that mootness occurs "when the parties have settled," because settlement deprives a party of a "continuing interest" in the litigation). Accordingly, we **VACATE** the court's judgment and **REMAND** to the district court to enforce the settlement agreement and **DISMISS** the case.

5