George Henderson GRIFFITH, Appellant,

v.

W. B. CASTEEL, Appellee.

No. 13201.

Court of Civil Appeals of Texas.

Houston.

April 17, 1958.

Rehearing Denied May 15, 1958.

Kennerly & Lesher, A. C. Lesher, Jr., Houston, for appellant.

Hill, Brown, Kronzer & Abraham, Robert L. Steely, Houston, for appellee.

WOODRUFF, Justice.

W. B. Casteel instituted this suit against appellant, George Henderson Griffith, to recover damages for personal injuries alleged to have been sustained on October 8, 1955, in an intersectional collision between a pickup truck in which he was riding and a passenger car being driven by appellant.

Pursuant to jury findings favorable to him, judgment was rendered in his behalf against appellant for the total sum of $18,064.45. Appellant in due time filed a motion for new trial, which was amended, and upon presentation, it was overruled by the trial court and appellant has duly perfected his appeal.

The appellant presents three Points of Error. First, error is assigned to the court's refusal to grant a new trial because of certain statements made by appellee's counsel during the argument in the presence of the jury, which informed them that an insurance company was defending the case; second, because appellee was guilty of contributory negligence, as a matter of law; and, third, because an element of mental anguish was included in the damage issue without any evidence to support it.

Inasmuch as Points Two and Three will require a brief review of the testimony, they will be discussed first. This will dispense with any further general statement of the nature of the case.

The testimony showed that appellee, who was about 55 years of age, came to Houston to live with his niece, Annie Ruth Vandever, about three years before the accident. Having a clubfoot and a limited education, he experienced difficulty in obtaining employment. He did odd jobs, such as yard work and sorting eggs, prior to the accident, and averaged about $10 to $12 per week. On the day of the collision he had done some work for his niece and having loaded a quantity of grass on the bed of

a pickup truck, he was sitting on it to hold it down at the time the accident occurred. While sitting in this position he was facing north. The truck was being driven by Mrs. Vandever as it proceeded west on 22nd Street.

Immediately before the accident appellant was driving a passenger car north on Columbia Street, and upon entering the intersection of 22nd and Columbia Street the passenger car struck the left rear fender of the pickup. As a result of the collision the pickup truck was turned over on its righthand side and appellee was thrown out of the pickup and into a ditch, sustaining an injury to his right knee.

It was shown that appellee was taken in an ambulance to the Heights Hospital, where he was given "shots" to ease the pain. An examination revealed that a bone in his knee had been broken, and his right leg was put in a cast. After the third or fourth day in the hospital, he was taken to his home. Dr. Harlan and Dr. Harrington each saw appellee several times while he was in the hospital. The cast remained on his leg until several months after Christmas of 1955. On the trial he stated that the only claim he was making was for a broken knee, that it was weak and it pained him if he stood on it for any length of time, or if he walked any distance it would swell. When he first got up in the morning it didn't give trouble, but after a day's activity it would ache and throb. He stated that his knee was weak and it pained him, although after about June, 1956, he was able to sort a few eggs and mow a few yards. Since he started working again about the Fall of 1956, he averaged about $6 to $8 per week.

Dr. Harrington, who treated appellee and applied the cast, said that in his opinion appellee had a 25% permanent disability to his right knee, however he had made a fairly good recovery. He further stated that appellee's knee would require medical attention in the future, which would cost on an average of about $25 to $30 each year.

Appellee testified that from where he was sitting on the truck he could not see to the front, nor to the left, but only to the right, although if he had been in the cab he could have seen the oncoming traffic. He also stated that he did not make an effort to keep a lookout for traffic, nor did he warn Mrs. Vandever but left his wellbeing to her. He testified, too, that he did not see the appellant's automobile before the collision.

Mrs. Vandever testified that before entering the intersection of Columbia and 22nd Street, she looked and saw appellant's car coming about 40 feet away and thought she had plenty of time. She then looked to her right and as she entered the intersection she looked to the left and saw appellant. She was slightly over half way into the intersection when her car was hit on the left rear fender by appellant's right front bumper and fender.

By Point Two appellant contends that the trial court erred in rendering judgment for appellee because he was guilty of contributory negligence, as a matter of law, in sitting on the bed of the truck facing in the opposite direction from which appellant was approaching and where he could neither see the appellant's automobile or warn Mrs. Vandever of its approach. Although she was not a party to the suit the jury failed to find that Mrs. Vandever was guilty of any act of negligence, and likewise the findings exonerated appellee from any negligence in failing to warn Mrs. Vandever of the approach of appellant's automobile and in failing to keep a proper lookout. Appellant relies upon Texas-Mexican R. Co. v. Hoy, Tex.Com.App., 24 S.W. 2d 18. We fail to find here the exceptional circumstances which obtained in that case. We are of the opinion that this case falls squarely within the scope of the decision reached in Edmiston v. Texas & N. O. R. Co., Tex.Com.App., 135 Tex. 67, 138 S.W. 2d 526, and, viewed in the light most favorable to appellant, the evidence was sufficient only to raise issues of fact as to whether appellee was negligent. Those issues hav-

ing been found by the jury against the appellant, no error is presented by this Point and it is, therefore, overruled.

■■ In Point Three appellant asserts error on the part of the trial court in submitting to the jury, over his objection, as one of the elements of damage whether or not appellee suffered mental anguish, either past or future, because appellee testified that he had not done so in the past and there was no evidence that he would in the future. Appellant bases this contention primarily, if not solely, upon the contention that when appellee was asked on cross-examination in a deposition which was offered in evidence upon the trial if he had any mental pain or anguish, he answered, "No mental pain or anguish" but "just my knee"; "No, my knee is all that pained me, hurt." In this connection he also testified upon the trial that his knee "throbbed" if he was on it too long. It was in evidence that appellee was a man of very limited education. As heretofore stated, the doctor testified that appellee had sustained a 25% permanent disability to his knee and that it would require medical attention to some extent each year. Appellee was in sufficient pain at the time he reached the hospital that he was given "shots" and it was shown that he wore a cast on his leg some four or five months after the accident. It has long been held that mental suffering or anguish naturally accompanies a physical injury and any permanent disability resulting therefrom, and no direct proof thereof need be offered. 13 Tex.Jur., page 478, Damages, Sec. 285; Wells v. Ford, Tex. Civ.App., 118 S.W.2d 420, 426, writ dism.; Turner v. McKinney, Tex.Civ.App., 182 S.W. 431, 435. Appellant's Point Three is, therefore, overruled.

In Point One appellant contends that the trial court erred in not granting a new trial because the statement made by appellee's counsel during appellant's argument, that "The defendant is not being asked to pay any money" informed the jury that an insurance company was in fact defending the suit, which was improper and its harmful effect could not be cured by instruction.

Preliminary to a consideration of this Point, we must determine the purport of appellant's bystanders' bill, there being divergent contentions regarding what transpired. The argument, we take it, was not reported. On May 27, 1957, in connection with his amended motion for new trial, appellant presented to the trial judge a bill of exception reciting that, " * * * during the presentation of the Defendant's argument, and in particular at a time when Defendant's counsel was informing the jury that the Plaintiff was asking the jury to cause the Defendant to pay money for injuries caused by the negligence of Annie Vandever, counsel for the Plaintiff arose from his chair, faced the jury and objected to the remarks of Defendant's counsel, which objection was overruled by the Court, and added 'The Defendant is not being asked to pay any money.' The foregoing statement was made, by Plaintiff's counsel, within the hearing of the jury."

The trial judge qualified the Bill by the somewhat anomalous statement that, "I hereby find that I have no independent recollection of having heard the remarks referred to in said Bill of Exception * *."

Thereafter appellant, pursuant to Rule 372(j), Texas Rules of Civil Procedure, duly perfected a Bystanders' Bill by procuring the signatures and affidavits of Pete Bruno Dutka, one of the jurors, and Carroll R. Graham and John E. Pledger, Jr., two disinterested attorneys, wherein each of them as an affiant attested to the correctness of the Bill, the material parts of which were set out as shown above in appellant's requested Bill.

A few days later appellee filed several controverting affidavits. One was made by the juror, Pete Bruno Dutka, wherein he said he did not remember Mr. Steely's making any objection during Mr. Lesher's jury argument, and further that he didn't know the affidavit stated that he did, but "thought" it said he didn't remember. Representatives of "an insurance Company" he

said had contacted him several times and finally they told him if he would sign the paper they wouldn't "bother him any more." The controverting affidavit showed that the attesting affidavit was given to him and he took it to the notary public where he worked, asked that it be explained to him, and upon being told "that they couldn't bother him any more" he signed it and gave it back to the man who brought it to him.

■ Appellee contends that Mr. Dutka's controverting affidavit nullifies his attestation to the Bill and thus leaves the appellant's Bill attested to by only two bystanders, which would be insufficient under Rule 372(j), T.R.C.P. With this contention we cannot agree. Mr. Dutka was a qualified bystander at the time he attested to its correctness and, being joined in such attestation by two other bystanders, the requisites of Rule 372(j) were met and appellant's Bill was duly perfected. We find no support for the contention that a bystander by simply executing a controverting affidavit can invalidate a bystanders' bill wherein he was one of the required number of subscribing bystanders.

Controverting affidavits were also signed by James H. Campbell, an attorney having no interest in the case, and Mrs. C. R. Bradley, a witness who, as shown by the record, testified for the appellee. In addition thereto controverting affidavits were made by John L. Hill, Jr. and J. Curtiss Brown, who were law associates of appellee's counsel, Mr. Steely. Appellant contends that Messrs. Hill and Brown are interested parties and are not eligible to make valid controverting affidavits.

■ Rule 372(j), T.R.C.P., with minor textual changes, was formerly Article 2237, Vernon's R.C.S.[1] The word "by-stander" means one who stands near; a spectator; one who has no concern with the business transacting. Glover v. Pfeuffer, Tex.Civ.App., 163 S.W. 984, writ ref. Thus, an attorney in a case is not entitled to make a bystanders' bill. Glover v. Pfeuffer, supra; Ely v. Lasch, Tex.Civ. App., 11 S.W.2d 593; Harris County Flood Control Dist. v. Cohen, Tex.Civ.App., 282 S.W.2d 917; Carr v. De Witt, Tex.Civ. App., 171 S.W.2d 388. Law partners of an attorney handling a case cannot act as bystanders. Chance v. State, 125 Tex. Cr.R. 318, 68 S.W.2d 212; Avant v. State, 161 Tex.Cr. 577, 279 S.W.2d 863. While no Texas case directly in point has been found, it was held in McConnell v. Mc-Cord, 170 Ark. 839, 281 S.W. 384, that a witness is not a "bystander". See also 4-A C.J.S. Appeal and Error § 849, p. 748. Jurors, although not bystanders at the trial of the case, can sign a bystanders' bill after their discharge since they are impartial. Alamo Iron Works v. Prado, Tex.Civ.App., 220 S.W. 282. The record shows that Mr. Dutka gave his attestation to the bystanders' bill in this case long after his discharge.

The validity of appellant's attack upon the eligibility of Messrs. Hill and Brown to make valid controverting affidavits, therefore, depends upon whether or not a bystanders' bill which must be attested by bystanders can only be controverted by bystanders.

In Lee v. State, 144 Tex.Cr.R. 135, 161 S.W.2d 290, 293, it was said:

"Appellant then presented a bystanders' bill, which bill embodied appellant's proffered bill No. 12, without the trial court's qualification thereto. The State did not see fit to file a controverting *bystanders'* bill, and we are therefore relegated to a consideration

**1.** Art. 667, Vernon's Tex.Code Crim.Proc., provides: "The defendant, by himself or counsel, may tender his bill of exceptions to any decision, opinion, order or charge of the court or other proceedings in the case; and the judge shall sign such bill of exceptions, under the rules prescribed in civil suits, in order that such decisions, opinion, order or charge may be revised upon appeal. * * *" The decisions of our Court of Criminal Appeals, therefore, touching the perfecting and controverting of bystanders' bills are entitled to authoritative recognition.

of appellant's bystanders' bill  *  *".
(Emphasis ours.)

Again, in Palmer v. State, 157 Tex.Cr. R. 96, 246 S.W.2d 893, 895, we find the following discussion:

"The controversy between the trial court and appellant in regard to Bills 2 and 3 appears to have been on the question of whether or not appellant excepted to the remarks (of the district attorney—ours) notwithstanding the trial court's action in sustaining his objection and instructing the jury as requested.

"Appellant's bills are supported by affidavit of three persons, but the state has filed a controverting affidavit of a *bystander* to the effect that no exception was reserved as claimed in the bystanders' bill. * * *" (Emphasis ours.)

It was held that the bill was sufficiently controverted to require them to decide the issue from the affidavits.

In Lutz v. State, 146 Tex.Cr.R. 503, 176 S.W.2d 317, 319, we find a very definite statement to the effect that bystanders must be used to controvert a bystanders' bill, as follows:

"As thus presented, the only bills of exception, other than the one approved without qualification, which may be considered by us, are the bystanders' bills of exception, because of the well-established rule that, in order to controvert bystanders' bills of exception, the State must do so by bystanders."

From these authorities it appears that Messrs. Hill and Brown, who are law associates of appellee's counsel, are not bystanders and are not qualified to controvert appellant's bystanders' bill. Lutz v. State, supra; Chance v. State, supra.

When a bystanders' bill is controverted, the Court of Civil Appeals is to determine its correctness from the affidavits on file, the issue to be determined being the truth of the bill. Rule 372(j), T.R.C.P.; Palmer v. State, 157 Tex.Cr.R. 96, 246 S.W.2d 893, 895. If found to be true, the bystanders' bill governs. Peurifoy v. Wiebusch, Tex.Civ.App., 174 S.W.2d 619, no writ history.

Although it appears to be quite questionable whether or not Mrs. C. R. Bradley was a bystander, since no attack has been made upon her affidavit, it will be considered. She stated that she remembered "Mr. Steely making an objection at one point to Mr. Lesher's argument" but that she did "not recall exactly what was said." She also stated that she had been told of the statement attributed to Mr. Steely and she "knew Mr. Steely did not say that," because her husband was connected with insurance and claim matters and if he had said that she would have remembered it. Her affidavit was executed some nine or ten weeks after the trial.

The controverting affidavit executed by James H. Campbell, a bystander, stated that he was present only "during a part, but not all, of the final arguments in this case" and inasmuch as it was not executed until June 25, 1957, the argument having been made on April 19, 1957, there is an understandable vagueness as to his statement as to what actually transpired. He did say, however, that he was positive that Mr. Steely never said at any time during his presence that "The defendant is not being asked to pay any money."

The bystanders, Messrs. John E. Pledger, Jr. and Carroll R. Graham, attested to the correctness of appellant's bill by their affidavits, giving their versions of what transpired, and stating that the statement was made by Mr. Steely in the presence of the jury, "The defendant is not being asked to pay any money", under the circumstances as set forth in the bill. These affidavits were made on May 1, 1957, within less than two weeks after the date of the trial. Their statements are succinct, positive and unequivocal. Although Mr. Dutka, in his controverting affidavit, contradicted in part the attesting statement which he signed

before the notary of his own choice, we do not believe that it can be strongly contended that he did not know its contents when he took it to that notary for the avowed purpose of having it explained to him. The original statement corroborates those given by Messrs. Pledger and Graham. The circumstances warrant the placing of greater credence in his first affidavit than in the latter.

■ After a careful consideration of the competent verified statements given by the bystanders from which, under the law, the issue must be determined, we find the facts to be in conformity with those stated in the bystanders' bill filed by the appellant and as hereinbefore set forth. Harris County Flood Control Dist. v. Cohen, Tex. Civ.App., 282 S.W.2d 917, ref. n. r. e.; Peurifoy v. Wiebusch, supra; Rule 372(j), T.R.C.P.

We now come to a consideration of appellant's contention presented by Point One, contending that the jury was informed by appellee's counsel that appellant was insured. One of the critical fact issues in the case was whether the collision was proximately caused by the failure of Mrs. Vandever to keep a proper lookout as she drove her truck into the intersection or the appellant's failure to yield the right of way.

As shown by the Bystanders' Bill, during appellant's presentation and while appellant's counsel was arguing to the jury that appellee was asking them "to cause the appellant to pay money for injuries caused by the negligence of Annie Vandever", counsel for appellee objected to such remarks and, upon being overruled by the court, added, "The Defendant is not being asked to pay any money."

Appellee contends the remark was justified because appellant's argument was calculated to inform the jury that he was without any public liability insurance and consequently it was injurious to appellee. If such had been the effect of the argument, it would have been objectionable. Rojas v. Vuocolo, 142 Tex. 152, 177 S.W.2d 962.

■ However, we do not believe that the facts as stated in the Bystanders' Bill support that contention. On the contrary, it shows that appellant's counsel was arguing to the jury that appellee was asking them to cause appellant to pay for injuries which had been caused by the negligence of Mrs. Vandever. Under those circumstances, in our opinion, the statement of appellee's counsel that "The Defendant is not being asked to pay any money" placed before the jury the extraneous information that appellant was protected by insurance. D. & H. Truck Line v. Lavallee, Tex.Civ. App., 7 S.W.2d 661, writ ref.

Strikingly similar arguments have been held by our courts to have injected insurance into the trial. In Hurley v. McMillan, Tex.Civ.App., 268 S.W.2d 229, 233, writ ref., n. r. e., error was assigned to the remarks of appellee's attorney made in addressing the jury, as follows:

" 'We ask for common consideration on the point,' said appellee's counsel, 'so that when Mr. McMillan meets you or anyone else—and they say they didn't care what you answered to the damage issue, and I don't think Mr. Hurley does, either.' "

This Court, speaking through the late Associate Justice Cody, said:

"It is not conceivable that, if a party to a suit is the real and true defendant, and will have to pay the judgment, he would not very much care what the jury answered to the damages issue. We believe that a clear intimation that an insurance company is in fact defending the suit is the legal equivalent of informing the jury of such fact."

And, on motion for rehearing, it was further said:

"There was nothing vague about Mr. Hill's statement, when he was argu-

ing the damages issue to the jury, that he did not think Mr. Hurley cared how the jury answered that issue. A jury composed of intelligent men could only have understood, we believe, from that statement that Mr. Hurley was protected by liability insurance and so could not be personally affected however the personal damages issue was answered. To tell a jury of ordinary intelligence that the defendant in a damage suit did not care how the damages issue is answered is, we believe, the legal equivalent of stating that such defendant is protected by insurance." .

In Ulmer v. Mackey, Tex.Civ.App., 242 S.W.2d 679, 681, writ ref., n. r. e., after stating that it was error for plaintiff's counsel to make an argument to the jury from which it could be inferred that the defendant carried liability insurance, the court held that the following argument was improper:

" 'This court is here to protect any rights *of* Sergeant Ulmer has in this matter. The court is here for that. The court doesn't ask you who is going to pay this verdict or whether it will ever be paid.' "

In Sutton Motor Co. v. Crysel, Tex.Civ. App., 289 S.W.2d 631, 638, no writ history, which was an action to recover damages for personal injuries received in an automobile accident, the following argument was held to have injected insurance into the trial:

" 'Now, gentlemen, if this was a suit on a fire insurance contract, to recover proceeds of a policy and it was proved that that house was worth $25,000, there is nobody on this jury that would hesitate in awarding a verdict for $25,-000. Now, gentlemen, are you going to say that property rights are more sacred than human rights? I say to you again, gentlemen, we have shown and we have proved by the evidence that this young lady has been damaged far in excess of $25,000.' "

We are of the opinion, and therefore, so hold that under the rule applicable in this State the remark of appellee's counsel injected insurance into this case, and that it was, therefore, error. We therefore, believe it constituted reversible error. Sutton Motor Co. v. Crysel, supra; Kuntz v. Spence, Tex.Com.App., 67 S.W.2d 254; Continental Oil Co. v. Barnes, Tex.Civ. App., 97 S.W.2d 494, writ ref.; Hurley v. McMillan, Tex.Civ.App., 268 S.W.2d 229, writ ref., n. r. e.; Ulmer v. Mackey, supra.

At this point we find ourselves confronted with the question as to whether such prejudice to the appellant under these circumstances will be presumed to warrant the conclusion that the error complained of amounted to such a denial of the rights of the appellant as to be reasonably calculated to cause, and probably did cause, the rendition of an improper verdict and judgment against him, as contemplated by Rules 434 and 503, T.R.C.P. We are inclined to the opinion that such presumption is warranted, in view of the principle announced in Kuntz v. Spence, Tex.Com. App., 67 S.W.2d 254, 256, in declaring that, " * * * we judicially know that juries are much more apt to return a verdict for the injured party, and for a larger amount, if they know the loss is to ultimately fall on an insurance company."

This view, we believe, finds further support by the observation made in Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462, 465, as follows:

"This court takes judicial knowledge of the fact that a jury is more apt to render a judgment against a defendant, and for a larger amount, if it knows that the defendant is protected by insurance."

However, a consideration of the whole record convinces us that the comment of appellee's counsel probably did influence the jury to the appellant's prejudice. The jury awarded appellee damages in the sum of $18,064.45. Under appellee's own testimony, his loss of earnings for the full

year following the accident could have amounted to no more than $624, based on $12 a week for the full 52 weeks. He was 55 years old when the accident occurred and his doctor estimated that appellee sustained a 25% permanent disability to his right knee. At the time of trial appellee was earning from $6 to $8 per week, as compared to $10 to $12 per week at the time of his injury. The jury found that his total medical and hospital expenses to date of trial amounted to $364.45, and that the reasonable cash value of his future medical and hospital bills was $500. For his loss of earnings in the past, present value of his loss of earning capacity, and his physical pain and mental anguish, both past and future, the jury awarded appellee the sum of $17,200. We believe that the damages allowed by the jury in this case were, indeed, very liberal and suggest that the comment of appellee's counsel probably did influence the jury, to appellant's prejudice.

Appellee contends, however, that appellant by failing to object to the argument and not moving for a mistrial waived the error. In support of this contention he cites Ford v. Carpenter, 147 Tex. 447, 216 S.W.2d 558. In that case the plaintiff's counsel was asked if he desired to move for mistrial when the defendant developed during the cross-examination of the plaintiff that he had insurance. He declined to move for mistrial, and it was held that plaintiff had waived any right to complain after the trial. We find no parallel between that case and the one here.

The situation here was the same as that presented in Sutton Motor Co. v. Crysel, supra, where it was said:

"We think that any curative measures that might have been attempted, by either the court or counsel for plaintiff, could only have served to accentuate and magnify the prejudicial effects of the argument. In such circumstances, the rule is that the error is not waived by a failure to object and move for a mistrial at the time, and

the argument may be complained or for the first time by motion for a new trial. Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054, 1055; Texas & N. O. R. Co. v. Sturgeon, 142 Tex. 222, 177 S.W.2d 264; Wade v. Texas Employers' Ins. Ass'n, 150 Tex. 557, 244 S.W. 2d 197, 200."

We have examined the record in the case of Hurley v. McMillan, Tex.Civ.App., 268 S.W.2d 229, and find that no motion for a mistrial was filed in that case until after the jury had retired to consider its verdict and at a time when the court could not correct the complained of argument by instruction. The contention was there made that the appellant should not be heard to complain because no motion for mistrial having been timely filed, the argument was not so prejudicial that it could not have been cured by a timely objection and an instruction by the court.

In this connection the court said:

"And, of course, if the jury is informed that the suit is in fact defended by an insurance company, the court must declare a mistrial. See Kuntz v. Spence, Tex.Com.App., 67 S.W.2d 254, 256; Continental Oil Co. v. Barnes (writ refused), Tex.Civ.App., 97 S.W. 2d 494. We believe that the expression of the opinion that Mr. Hurley won't care how the damages issue is answered is a clear intimation that an insurance company will have to pay the judgment. Such an intimation cannot be withdrawn by the counsel following it up with the statement that the jury should answer the issue in accordance with the evidence."

We, therefore, conclude that the comment of appellee's counsel was of the "incurable" type, and that any curative measures that might have been attempted by either the court or counsel could have served only to accentuate and magnify the prejudicial effect of the statement. In such circumstances the rule is, as we understand it, the error is not waived by a fail-

ure to object and move for a mistrial at that time, and the argument may be complained of for the first time by a motion for new trial.

Appellant's Point One is sustained.

The judgment of the trial court is reversed and the cause remanded for new trial.