**George E. McGREDE, Appellant**

v.

**Melanie COURSEY, Independent Administrator of the Estate of Georgia Ruth Hester, Deceased, Appellee.**

No. 04–02–00063–CV.

Court of Appeals of Texas, San Antonio.

Jan. 21, 2004.

Frank M. Mason, Frank M. Mason, P.C., Longview, for Appellant.

A. Chris Heinrichs, Heinrichs & DeGennaro, P.C., San Antonio, for Appellee.

Sitting: CATHERINE STONE, Justice, PAUL W. GREEN, Justice, KAREN ANGELINI, Justice.

## OPINION

Opinion by: PAUL W. GREEN, Justice.

This appeal arises from a suit for misapplication or conversion of estate assets against Appellant George McGrede, a prior guardian of the estate of Georgia Ruth Hester. Melydia Edge initially brought suit against McGrede in her capacity as successor guardian of the estate. By the time the case went to trial Hester was deceased, and the independent executor of her estate, appellee Melanie Coursey, be-

came the named plaintiff. Following a jury trial, final judgment was rendered in favor of Coursey in the amount of $93,405.42 for the conversion charges and an additional $93,405.42 as exemplary damages for McGrede's breach of fiduciary duties. McGrede now appeals in five issues.

## BACKGROUND

George McGrede began serving as guardian of both the person and the estate of his sister, Georgia Ruth Hester, in September of 1982. In April of 1990, McGrede was judicially removed from his position, and Hester's daughter, Melydia Edge, was appointed as successor guardian. Pursuant to the court's order of removal, McGrede filed an Inventory and Appraisement and a Final Accounting of the estate. Edge filed an objection to the documents, claiming they were incomplete and insufficient. The guardianship proceedings were then transferred from Gregg County to Bexar County in 1991.

Edge filed suit against McGrede in March of 1992, reiterating her objections to the Inventory and Final Accounting filed by McGrede and claiming that McGrede should be held liable for "misappropriation, mismanagement, and/ or conversion" of Hester's estate, as well as his breach of fiduciary duty to Hester. The case went to trial in January 2001.

## THE ADMISSION OF TESTIMONY REGARDING BONDS AND INSURANCE

In his first issue, McGrede argues the admission of testimony regarding "bond" and "insurance" by the plaintiff's expert witness resulted in reversible error. At trial, Mark Stanton Smith testified as an expert in guardianships and fiduciaries on behalf of Coursey. He was called to ex-

plain guardianships and their purpose. He also explained what an inventory is, how it is used to determine the bond, and why a bond is needed in a guardianship situation. During his testimony, Smith talked about bonds and mentioned the words "insurance company" and "bonding company."

On appeal, McGrede contends this testimony should not have been allowed into evidence and constitutes reversible error. At trial, however, McGrede failed to object to the testimony as required under the Texas Rules of Appellate Procedure.[1] TEX.R.APP. P. 33.1. In his brief, McGrede argues an objection is not necessary in order to preserve error in this situation and cites several cases he claims support his contention. *See Rhoden v. Booth*, 344 S.W.2d 481, 487 (Tex.Civ.App.-Dallas 1961, writ ref'd n.r.e.); *Alexander Schroeder Lumber Co. v. Merritt*, 323 S.W.2d 163, 165 (Tex.Civ.App.-Texarkana 1959, no writ); *Griffith v. Casteel*, 313 S.W.2d 149, 157 (Tex.Civ.App.-Houston 1958, writ ref'd n.r.e.). The trial courts in each of these cases held the lack of objection or request for admonishment at trial did not constitute waiver. However, the trial courts in each situation also found that any curative measure attempted could only have served to accentuate and magnify the prejudicial effects of any argument regarding insurance. *See Griffith*, 313 S.W.2d at 157.

█ That is not the situation in this case. Smith's testimony did not serve as part of an argument involving McGrede's possession of insurance, but rather stood as a partial explanation of how a guardianship is run and the responsibilities of a guardian. Any curative measure, such as the instruction given to the jury by the court would most likely not have served to accentuate and magnify the prejudicial ef-

1. McGrede did, however, move for a mistrial at the close of Stanton's testimony.

fects of the testimony. Therefore, under the rules of appellate procedure, McGrede failed to preserve error by not timely objecting to Smith's testimony. Tex.R.App. P. 33.1.

■■■ Even assuming an objection at trial was not necessary and McGrede did preserve error as to the mention of bonds and insurance, he fails to show that such error was harmful. References to insurance which, when reasonably construed, tend to imply to the jury that the defendant is protected by insurance and will not be required to pay any judgment which may be rendered, are improper. *See Moncada v. Snyder,* 137 Tex. 112, 152 S.W.2d 1077, 1080 (1941); *Springer v. Baggs,* 500 S.W.2d 541, 542 (Tex.Civ.App.-Texarkana 1973, writ ref'd n.r.e.). Although the mention of insurance before a jury is generally disallowed, it is not always reversible error. *Dennis v. Hulse,* 362 S.W.2d 308, 309 (Tex.1962); *Meyers v. Searcy,* 488 S.W.2d 509, 514 (Tex.Civ.App.-San Antonio 1972, no writ). The party appealing must show (1) that the reference to insurance probably caused the rendition of an improper judgment in the case; and (2) that the probability that the mention of insurance caused harm exceeds the probability that the verdict was grounded on proper proceedings and evidence. *Dennis,* 362 S.W.2d at 309; *Meyers,* 488 S.W.2d at 514; *cf. University of Texas v. Hinton,* 822 S.W.2d 197, 201 (Tex.App.-Austin 1991, no writ).

In the present case, the probate court gave the jury an instruction to disregard any information regarding either a bonding company or insurance company, specifically instructing them "not to give any thought to the concept of whether there is or is not insurance of any kind involved in this." In addition, McGrede presents this Court with no evidence showing that Stanton's testimony probably caused the rendition of an improper judgment. *See Dennis,* 362 S.W.2d at 309. Issue one is overruled.

### Exclusion of Evidence: Successor Guardian's Failure to Comply with Probate Code

■■■ In his second issue, McGrede contends the trial court erred in excluding evidence, on the issue of punitive damages, of either Edge's or Coursey's alleged failure to comply with the Probate Code and the Court's orders during Edge's administration of the guardianship and probate of the estate. The admission of evidence is a matter within the discretion of the trial court. *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex.1995). A person seeking to reverse a judgment based on evidentiary error need not prove that but for the error a different judgment would necessarily have been rendered, but only that the error probably resulted in an improper judgment. *Id.*

■■ In *Alamo Nat'l Bank v. Kraus,* the Texas Supreme Court enumerated the elements which a jury may consider in making an award for exemplary damages. 616 S.W.2d 908, 910 (Tex.1981). In determining whether an award of exemplary damages is reasonable the fact finder should consider 1) the nature of the wrong; 2) the character of the conduct involved; 3) the degree of culpability of the wrongdoer; 4) the situation and sensibilities of the parties concerned; and 5) the extent to which such conduct offends a public sense of justice and propriety. *Id.; Owens–Corning Fiberglas Corp. v. Malone,* 972 S.W.2d 35, 39 (Tex.1998). Texas Civil Practices and Remedies Code § 41.010(a) codifies these factors, adding a sixth factor, the net worth of the defendant, to the list. Tex. Civ. Prac. & Rem.Code Ann. § 41.011(a)(Vernon 2001).

■ On appeal, McGrede argues that evidence of the conduct of Edge and Coursey is relevant to determining punitive damages because the evidence goes to the situation and sensibilities of the parties and therefore should have been admitted. In the past, appellate courts have found evidence as to the situation and sensibilities of the parties to relate to the parties' relative situations during the period in question. *See Housing Authority of the City of Crystal City v. Lopez*, 955 S.W.2d 152, 160 (Tex.App.-Austin 1997, no writ); *City of Brenham v. Honerkamp*, 950 S.W.2d 760, 772 (Tex.App.-Austin 1997, pet. denied). The only period which is the subject of the present case is the duration of McGrede's term as guardian; any actions taken or not taken by Edge and Coursey following McGrede's term are irrelevant to the issue of punitive damages in this case. The trial court did not abuse its discretion in excluding the evidence. McGrede's second issue is overruled.

### TRANSFER OF GUARDIANSHIP

In issue three, McGrede argues the transfer of the guardianship of the estate to Bexar County was improper. When a guardian or any other person desires to remove the transaction of the business of the guardianship from one county to another, the person shall file a written application in the court in which the guardianship is pending stating the reason for moving the transaction of business. TEX. PROB.CODE. ANN. § 612 (Vernon 2001).[2] Under the Probate Code, upon hearing an application under section 612, if good cause is not shown to deny the application and it appears as though removal of the guardianship is in the best interests of the ward, the court shall enter an order authorizing the removal. TEX. PROB.CODE ANN. § 614 (Vernon 2001).

Edge filed a motion to transfer the guardianship in February of 1991. In the motion, Edge argued that Hester was a resident of Bexar County, that she as present guardian was a resident of Bexar County, and that transferring the guardianship to the county of their residence would assist her and allow Hester to assist her in determining the exact nature of the estate and in "formulat[ing] a contest and an objection to the Final Account of Guardianship filed by ..." McGrede. In response to Edge's motion, McGrede filed a brief in opposition of the motion to transfer. He argued that, because he was a resident of Gregg County and because the alleged acts or omissions which were the subject of Edge's complaint took place in Gregg County, it would be arbitrary and unreasonable for the court to transfer the guardianship. He did not argue that such a transfer would not be in the best interest of the ward, Hester. The trial court subsequently found there was no good cause shown not to transfer and that it would be in the best interest of Hester to transfer.

■ The evidence fails to demonstrate that the transfer was not in the best interest of the ward. Under the applicable sections of the Texas Probate Code, the trial court did not abuse its discretion in transferring the guardianship.[3]

2. At the time Edge filed her motion to transfer the guardianship, the applicable statute was Texas Probate Code § 121. Section 121 provided, in pertinent part, for the same procedure to transfer.

3. McGrede cites the case of *Lesley v. Lesley*, 664 S.W.2d 437 (Tex.App.-Fort Worth 1984, no writ) in his argument against the alleged forum shopping of the appellees. *Lesley,* however, stands for the proposition that the transfer of a contested probate matter from a constitutional county court to district court is mandatory under Probate Code § 5(b). Once removed to the district court, the county court had no discretion to transfer the matter. That is not the case here.

In the last sentence of his argument regarding this issue, McGrede also includes a claim that the guardianship transfer was fraudulently procured in order to manufacture venue in a county favorable to the appellees. McGrede fails to cite either authority or evidence for this argument. Accordingly, we find this contention to be without merit. *See* Tex. R.App. P. 38.1. We overrule McGrede's third issue.

## Motion to Transfer Venue

In his fourth issue, McGrede argues the trial court erred in failing to grant his motion to transfer venue from Bexar County back to the county of his residence, Gregg County. In January of 2001, McGrede filed a motion to transfer venue. The motion was filed pursuant to Texas Probate Code section 611. The court denied McGrede's motion following a hearing.

Under the Texas Rules of Civil Procedure, an objection to improper venue is waived if not made by written motion filed prior to or concurrently with any other plea, pleading or motion, except a special appearance under Rule 120a. Tex.R. Civ. P. 86. Prior to filing his motion to transfer venue, McGrede filed an answer to Edge's petition, as well as a notice of appearance and motion for continuance. Therefore, McGrede waived his opportunity to object to improper venue.

Even if McGrede had preserved his objection, he failed to demonstrate that the court abused its discretion in denying his motion. Under section 611(c), if it appears to the court at any time before the guardianship is closed that the proceeding was commenced in a court that did not have venue over the proceeding, the court shall, on application of any interested person, transfer the proceeding to the proper county. Tex. Prob.Code Ann.

§ 611(c) (Vernon 2001). If the record contains any evidence that venue was proper, even if the preponderance of the evidence is to the contrary, the appellate court must uphold the trial court's determination. In determining whether venue was proper, we consider the entire record including the trial on the merits. Tex. Civ. Prac. & Rem.Code Ann. § 15.064(b) (Vernon 2002); *Eddins v. Parker*, 63 S.W.3d 15, 17 (Tex. App.-El Paso 2001, pet. denied). If there is any probative evidence in the record demonstrating that venue was proper in the county where judgment was rendered, we must uphold the trial court's ruling. *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 758 (Tex.1993); *Eddins*, 63 S.W.3d at 17. In conducting this review, we must view all the evidence in the light most favorable to the trial court's ruling. *Ruiz*, 868 S.W.2d at 758; *Eddins*, 63 S.W.3d at 18.

As discussed above, the guardianship was properly transferred to Bexar County prior to the filing of the suit. In addition, Edge, who filed the suit and served as successor guardian, resided in Bexar County. Venue was, therefore, proper in Bexar County, and the trial court did not abuse its discretion in denying McGrede's motion. Issue four is overruled.

## Rule 11 Agreement and Motion for Continuance

In his final issue, McGrede argues the trial court erred in refusing to enforce the parties' Rule 11 agreement to continue the case and in overruling his motion for a continuance. In May of 2000, McGrede's attorney withdrew from the case. Attorney Frank Mason agreed to take the case, but had conflicts with the case's trial setting of January 15, 2001. Mason then corresponded at least once, in August of 2000, with Coursey's attorney, Chris Henrichs, regarding the conflict. Henrichs re-

sponded on August 30, 2000. The pertinent portion of his letter is as follows:

> I am in receipt of your letter ... regarding potential conflicts in the trial date. Please let me know if you actually are going to enter an appearance as counsel of record in this case. If so, I will certainly work with you in trying to reach a mutually convenient trial date. However, if you are not going to be the attorney of record, I would like to get this matter set and heard as quickly as possible.

McGrede argues that Heinrich's letter serves as a binding agreement under Rule 11 and that the trial court erred in failing to enforce this agreement.

 Under Texas Rule of Civil Procedure 11, no agreement between attorneys or parties touching any suit pending will be enforced unless it is in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered as of record. TEX.R. CIV. P. 11; *Padilla v. La France*, 907 S.W.2d 454, 459 (Tex.1995). In the past, the Texas Supreme Court has analogized the writing requirement to that of the statute of frauds. *See* TEX. BUS. & COM. CODE § 26.01; *Padilla*, 907 S.W.2d at 460. In order to satisfy the statute of frauds, a writing must be "complete within itself in every material detail" and "contain all of the essential elements of the agreement, so that the contract can be ascertained from the writings without resorting to oral testimony." *Padilla*, 907 S.W.2d at 460; *Cohen v. McCutchin*, 565 S.W.2d 230, 232 (Tex.1978).

 Rule 11 also requires that an agreement be filed with the papers as part of the record. Although Rule 11 requires the writing to be filed in the court record, it does not say when it must be filed. The purpose of the rule—to avoid disputes over the terms of oral agreements—is satisfied so long as the agreement is filed before it is sought to be enforced. *Padilla*, 907 S.W.2d at 461.

 Although Heinrich's letter acknowledges the existence of Mason's potential conflicts with the January trial date, the letter does not set out all material terms of an agreement for continuance. The wording of the letter is such that Heinrich even seems unsure as to whether Mason is definitely serving as counsel of record in the case. The letter does not agree to postpone or continue the trial, does not list a date or a length of time for a proposed continuance, but merely asserts that "if" Mason is the counsel of record, Heinrich will "work with [him] in trying to reach a mutually convenient date." In addition, McGrede did not file the supposed Rule 11 agreement with the court until January 9, at his hearing for continuance at which time he was attempting to enforce the agreement. Under the writing and filing requirements of Rule 11, there was no binding agreement between the parties to continue the trial date.[4]

 Alternatively, McGrede argues the trial court erred in denying his motion for continuance. A trial court's denial of a motion for continuance is reviewed under an abuse of discretion standard. *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 685 (Tex.2002). The parties

---

4. As further evidence of the lack of a Rule 11 agreement in the matter of a further continuance, the record contains at least two other Rule 11 agreements made between the parties. Both are entitled "Rule 11 Agreement," specifically listing the terms of the agreement and the fact that such agreement is binding on both parties. Both agreements are signed by each party and were timely filed with the trial court. The letter from Heinrich to Mason fails to follow this format.

involved had agreed to continue the case several times before. The case was originally set for February 23, 1999 and was reset for August 23, 1999. McGrede again asked for a continuance in August of 1999, and the case was reset for October 18, 1999. This date conflicted with another case, and the case was again moved. Due to further complications, such as McGrede's attorney needing emergency surgery and a full court docket, the case was moved again numerous times and finally set for January of 2001. As stated above, Mason began handling the case for McGrede in August of 2000, four months before the original trial date. Although the record was extensive, McGrede made no formal requests to the court for additional time and even hired local counsel to assist in the trial preparation. McGrede did not move for the continuance in question until January 5, 2001, eleven days before trial. Under these circumstances, we do not believe the trial court abused its discretion in denying McGrede's motion for continuance. McGrede's final issue is overruled.

The judgment of the trial court is affirmed.