

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00230-CV

_____

MIRANDA ALLEN, Appellant

V.

ASHLEE INMAN, Appellee

On Appeal from County Court at Law No. 2
Tarrant County, Texas
Trial Court No. 2016-004707-2

Dissenting Memorandum Opinion by Justice Gabriel

**DISSENTING MEMORANDUM OPINION**

Jury argument is restricted to the evidence and opposing counsel's arguments. *See* Tex. R. Civ. P. 269(e). But even if these restrictions are flouted, reversal of a jury verdict based on improper jury argument is the exception, not the rule, mainly because it is difficult to assay the harm arising from the argument in light of the entirety of the record. *See Living Ctrs. of Tex., Inc. v. Peñalver*, 256 S.W.3d 678, 680–81 (Tex. 2008) (per curiam); *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 839–40 (Tex. 1979); *Martinez v. Williams*, 312 S.W.2d 742, 750 (Tex. App.—Houston 1958, no writ). Here, however, I believe the challenged argument was patently improper and harmful. Accordingly, I respectfully disagree with the majority's contrary conclusion and would remand the case for a new trial.

## I. CRITICAL FACTS

The majority ably recounts the timeline of the jury arguments and the resulting objections. I will briefly explain what happened to provide context for my disagreement. And because the majority declines to name the counsel involved, I will follow suit and will refer to Allen's trial counsel as Attorney A, to Inman's pretrial counsel as Attorneys X and Y, and to Inman's trial counsel as Attorney Z. Attorneys X, Y, and Z were members of the same firm.

### A. THE DEPOSITION

Before trial, Attorney A noticed the deposition of Dr. Craig DuBois, Allen's medical expert regarding Inman's medical-care expenses. The day before the October

2

deposition, Attorney X texted Attorney Y to see if someone was "covering" the deposition on Allen's behalf. Attorney X was unsure if he sent the text because of a scheduling conflict or because of "something [he] had going on with [his] father," who was gravely ill. In any event, Attorney Y never responded.

The day of the deposition, Attorney A, DuBois, and an attorney for Allen's insurer appeared. No one appeared on behalf of Inman. Attorney A called his secretary and asked her to contact Inman's attorneys to ask if they were delayed. Attorney Y told the secretary that the firm "simply did not have anyone to cover the deposition, and that [Attorney A] should proceed with the deposition without their presence." Attorney Y gave no explanation for the failure to appear. The secretary immediately sent Attorney Y and Attorney Z an email confirmation that Attorney Y had "authorized [Attorney A] to proceed with the deposition of Dr. DuBois this morning, without the appearance of an attorney from your office on behalf of [Inman]." Attorney A questioned DuBois at the deposition with no cross-examination.

## B. THE TRIAL

At trial, Inman called a medical expert, Dr. Jeffrey Komenda, who questioned DuBois's opinions. Attorney A cross-examined Komenda and inquired whether DuBois would have been "torn up" at his deposition if DuBois's opinions were as unsupported as Komenda posited. Komenda responded, "Yes, but as we know, that is not able to be - - didn't happen this time." Attorney Z also called Inman's treating

3

physician, Dr. Benjamin Dagley, who testified that he disagreed with DuBois's treatment recommendations that differed from Dagley's.

DuBois did not testify in person; rather, Attorney A played DuBois's deposition for the jury. After the deposition was played for the jury, Attorney Z stated, "We have no questions, your Honor."

During closing jury arguments, Attorney Z asserted that DuBois's opinion should not be given weight because he did not practice medicine in the Dallas/Fort Worth area, he was much older than Dagley, he was "stuck back in the 70s," and relied too heavily on "a bunch of pain killers" to hypothetically treat Inman. Attorney A responded to these criticisms and argued that Inman had not questioned DuBois about his opinion regarding the reasonableness or necessity of Inman's medical expenses "because there's no real basis" to Inman's challenge. Attorney Z then came out swinging, explaining that Inman had not asked DuBois questions for two reasons: (1) Inman's expert evidence sufficiently rebutted DuBois's opinion and (2) Attorney X's father had died the day before the deposition and could not appear for the deposition. Attorney A timely objected to this second reason at the first opportunity and before Attorney Z could give any details:

> [Attorney Z]: Ladies and gentlemen, there's two things. I hope that this case is decided by logic and not by an attorney who yelled the loudest or who didn't let the witnesses answer the questions or who kept interrupting the witnesses. . . . [Attorney A] said that we didn't controvert Dr. DuBois' testimony. There's two reasons for that. One, it really wasn't necessary, because Dr. Komenda and Dr. Dagley already testified about the procedures and the cost. And the second reason why he wasn't questioned was the attorney who had this case before - -

4

[Attorney A]: Objection, your Honor - -

[Attorney Z]: I got involved - -

[Attorney A]: - - he's going outside - -

        . . . .

    . . . He's trying to give an explanation as to why - -

The trial court overruled the objection and refused Attorney A's request to reopen the evidence because Attorney A had "opened the door" to the no-show explanation; Attorney Z seized on the trial court's language in his explanation of the second reason. The majority quoted Attorney Z's argument, but I do so again because the language is particularly important to my ultimate conclusion:

> Ladies and gentlemen - - and I want everyone to look at me when I say this. The reason why an attorney did not show up to Austin to depose Dr. DuBois was because the attorney that had the case - - his name is [Attorney X], and his father passed away the day before. [Attorney X] no longer works with our firm. He's gone on to another firm, but that's why. He says that it was controverted [sic]. Well, a lot of this stuff that he's done in this case is done to deliberately shift you and get you away from using the logic. He opened the door, and I wanted to provide an explanation for that.

After the jury retired to deliberate, Attorney A again asked to reopen the evidence to proffer a rebuttal to the circumstances surrounding DuBois's deposition and later filed a motion for new trial based on Attorney Z's improper and incurable jury argument. *See* Tex. R. Civ. P. 270, 320. The trial court was unmoved.

## II.  IMPROPER JURY ARGUMENT

To justify reversal of the trial court's judgment based on improper jury argument, Allen must prove that the argument was erroneous, was not invited, and

5

was preserved at trial. *See Standard Fire*, 584 S.W.2d at 839. Allen must also show the requisite harm arising from the argument. *See Peñalver*, 256 S.W.3d at 680–81; 4 Roy W. McDonald & Elaine A. Grafton Carlson, *McDonald & Carlson Texas Civil Practice* § 23:24 (2d ed. 2019).

## A. WAS THE ARGUMENT IMPROPER?

The majority notes that Attorney Z argued outside the record, which was improper. *See* Tex. R. Civ. P. 269(e). I agree.

## B. WAS THE ARGUMENT INVITED?

The majority seems to conclude that the argument was invited by Attorney A's pointing out that DuBois's testimony was entitled to great weight because he had not been cross-examined, which invited Attorney Z to explain why Attorney X had not questioned DuBois. I do not read Attorney A's argument in that light. Attorney A did argue that DuBois's opinion had been "unrebutted"; but Attorney A was responding to Attorney Z's assertion that DuBois's opinion was not worthy of credence because he was nothing more than an out-of-town hired gun, and an old one at that. Attorney A's statement that DuBois had been unchallenged was absolutely true. No one challenged DuBois's opinion at the deposition, and Attorney Z affirmatively stated in the jury's presence that Inman had no questions for DuBois.

I would conclude that this truthful argument did not invite an outside-the-record response. If anything, Attorney A's argument was invited by Attorney Z's

6

attacks on DuBois's age, qualifications, education, and partiality in his closing argument.

## C. WAS THE ARGUMENT PRESERVED?

I disagree with the majority and would conclude that Allen clearly preserved any error arising from Attorney Z's outside-the-record explanation as to why DuBois was not cross-examined during the deposition. By specifically objecting as soon as it was clear Attorney Z was going to argue outside the record to explain why DuBois was not cross-examined and by getting an adverse ruling, Allen preserved the issue for our review.[1] *See* Tex. R. App. P. 33.1(a); *Peñalver*, 256 S.W.3d at 680; *see also* McDonald & Carlson, *supra*, § 23:24[b].

## D. WAS THE ARGUMENT HARMFUL?

Because I consider Allen's jury-argument complaint to be preserved, I disagree with the majority that Allen would be entitled to a new trial only if she established that Inman's argument was incurable by an instruction to disregard or a retraction. Incurable argument is argument that requires no contemporaneous trial objection to result in relief. *See Griffith v. Casteel*, 313 S.W.2d 149, 156–58 (Tex. App.—Houston 1958, writ ref'd n.r.e.); McDonald & Carlson, *supra*, §§ 23:23, 23:24[a]; *see also* Tex. R.

---

[1] Even if Allen's objection had not been specific or timely enough as urged by the majority, Allen preserved any incurable error through her belt-and-suspenders motion for new trial. *See* Tex. R. Civ. P. 324(b)(5). But as I explain, Allen does not need to establish that the argument was incurable based on her specific and timely (although unsuccessful) objection.

Civ. P. 324(b)(5) (allowing jury-argument complaint to be raised for the first time in motion for new trial if argument was incurable and "not otherwise ruled on by the trial court"). Because Allen timely objected to the improper argument and received an adverse ruling, she needs to show that the argument was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. In other words, she must establish that the entire record includes more reason than not to believe that the jury's verdict was probably influenced by the improper argument.[2] *See* Tex. R. App. P. 44.1(a)(1); *Aultman v. Dall. Ry. & Terminal Co.*, 260 S.W.2d 596, 599–600 (Tex. 1953); *Sw. Greyhound Lines, Inc. v. Dickson*, 236 S.W.2d 115, 120 (Tex. 1951); McDonald & Carlson, *supra*, § 23:24[b].

I believe Allen has met that burden. Attorney Z raised DuBois's alleged deficiencies in his closing argument, and Attorney A responded with a true statement—Inman had not cross-examined DuBois. In fact, Attorney Z gave the

_____

[2]The majority recognizes this test for harm and applies it to what the majority determines was an unpreserved jury-argument complaint. In my opinion, unpreserved jury argument must meet a more stringent harm test; thus, unpreserved argument error is reversible only if the appellant can show that the argument, considered in context, was reasonably calculated to cause such prejudice to the opposing party that a curative action could not eliminate the probability that it resulted in an improper verdict. *See Peñalver*, 256 S.W.3d at 680–81; McDonald & Carlson, *supra*, §§ 23:21, 23:24 (citing *Otis Elevator Co. v. Wood*, 436 S.W.2d 324, 333 (Tex. 1968)). In short, Allen should not be required to show that a curative action would not have removed the stain caused by the erroneous argument because she timely and specifically preserved her argument. But this demarcation is pedantic here because I believe Allen's objection was preserved and, therefore, should be reviewed under the probability harm standard under Rule 44.1(a)(1) that the majority applies. *See* McDonald & Carlson, *supra*, § 23:24[b].

8

impression that he could have cross-examined DuBois at trial, even though DuBois was not physically present at that time, when he stated he had no questions after the deposition was played. Attorney Z's second round of attack, which is the argument challenged here, was to explain that Attorney X had not appeared because his father had died, casting Attorney A in the role of villain because he had proceeded with the deposition even though Attorney X was grieving his father. This characterization was inflammatory, false, and wholly outside the record.

Attorney Z emphasized the characterization by telling the jury to "look at me when I say this." He further argued that Attorney A's behavior at the deposition was in line with Attorney A's trial behavior: "Well, a lot of this stuff that [Attorney A] has done in this case is done to deliberately shift you and get you away from using that logic." The trial court also emphasized it by overruling Attorney A's objection and request to reopen and by incorrectly stating that Attorney Z's argument was Attorney A's fault—"you opened the door, sir, so if you continue - - your time is still ticking"—thereby giving apparent approval to Attorney Z's characterization of Attorney A's actions at the deposition. *See Hemmenway v. Skibo*, 498 S.W.2d 9, 14 (Tex. App.—Beaumont 1973, writ ref'd n.r.e.); *Traders & Gen. Ins. Co. v. White*, 320 S.W.2d 702, 706 (Tex. App.—Amarillo 1959, writ ref'd n.r.e.); *Bell v. Bell*, 248 S.W.2d 978, 984 (Tex. App.—Amarillo 1952, writ ref'd n.r.e.); *Sherwood v. Murray*, 233 S.W.2d 879, 883 (Tex. App.—El Paso 1950, no writ).

I would conclude that the entirety of the record shows that it is more probable than not that the jury's verdict was influenced by this argument. In other words, the argument probably caused the rendition of an improper judgment. The only disputed issue at trial was Inman's damages. Inman had Komenda and Dagley to testify to the issue; Allen proffered DuBois. Attorney Z's argument attacked the credibility of DuBois's testimony, not on the basis of fact as Komenda and Dagley had, but on the incorrect basis that Attorney A had callously continued with DuBois's deposition even though he knew Attorney X could not be there because his father had died. In fact, Attorney Z's assertion that Attorney X's father had died the day before the deposition was untrue.

Even if the reason for Attorney X's no show was caused by his father's illness, Attorney Y did not inform Attorney A of that fact and, indeed, encouraged Attorney A to proceed with the deposition without a representative for Inman. Further, Attorneys X, Y, and Z made no further discovery efforts regarding DuBois, choosing to let DuBois's unchallenged deposition stand, and then argued that Attorney A was callous for continuing DuBois deposition, which Attorney Z asserted was Attorney A's general modus operandi. Although the trial court was given the opportunity to remove some of the taint caused by this improper argument when Allen objected, the trial court instead emphasized Attorney Z's characterization of Attorney A by overruling the objection and ostensibly approving it.

DuBois testified that Komenda and Dagley had charged approximately fifteen times more for Inman's medical care than was necessary. Although the jury awarded Inman approximately half of her asserted medical expenses, the jury did not credit DuBois's testimony regarding the extent of the expenses' unreasonableness. And even though some of the disparity could be attributed to Dagley's and Komenda's testimony about DuBois's conclusions, I believe that it is more probable than not that the jury discounted DuBois's testimony based on Attorney Z's improper argument. This is the definition of harmful error. *See, e.g.*, *Fortenberry v. Fortenberry*, 582 S.W.2d 188, 190 (Tex. App.—Beaumont 1979, writ ref'd n.r.e.); *Fulmer v. Thompson*, 573 S.W.2d 256, 266–67 (Tex. App.—Tyler 1978, writ ref'd n.r.e.); *McMullen v. Coleman*, 135 S.W.2d 776, 778–79 (Tex. App.—Waco 1940, no writ).

My conclusion would be the same even if Allen had not timely and specifically objected to the improper argument at trial. Because Allen raised the argument in his motion for new trial, he preserved any error to the extent it was incurable. *See* Tex. R. Civ. P. 324(b)(5). For the same reasons I believe the challenged argument probably caused the rendition of an improper verdict, I would conclude that Attorney Z's argument was so inflammatory and prejudicial that the jury members, having heard it, could not have put it out of their minds even had they been instructed by the court to do so. *See, e.g.*, *Peñalver*, 256 S.W.3d at 680–82; *S. Pac. Co. v. Hubbard*, 297 S.W.2d 120, 125–26 (Tex. 1956); *Showbiz Multimedia, LLC v. Mountain States Mortg. Ctrs., Inc.*, 303 S.W.3d 769, 771–72 (Tex. App.—Houston [1st Dist.] 2009, no pet.); *Griffith v.*

*Casteel*, 313 S.W.2d 149, 156–58 (Tex. App.—Houston 1958, writ ref'd n.r.e.); *McMullen*, 135 S.W.2d at 778–79. In other words, no level of curative instruction or censure could have cured the taint on the jury's verdict arising from the argument, i.e., the argument was incurable and, therefore, resulted in reversible error. *See generally Otis Elevator*, 436 S.W.2d at 333 ("[A]n argument may be so inflammatory that its harmfulness could not be eliminated by an instruction to the jury to disregard it. The prejudicial nature of the argument is so acute that it is 'incurable.'").

### III. CONCLUSION

I agree with the majority that Attorney Z's argument was outside the record and, thus, was improper. But I disagree that this argument was not preserved, was invited, or was harmless. Accordingly, I respectfully dissent to the majority's memorandum opinion and judgment.

/s/ Lee Gabriel
Lee Gabriel
Justice

Delivered: December 17, 2020

12