

# NUMBER 13-08-00448-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| TERESA M. VARNES, | Appellant, |
|---|---|

**v.**

| WILLIAM J. VARNES, | Appellee. |
|---|---|

## On appeal from the 267th District Court of Calhoun County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Garza and Vela
### Memorandum Opinion by Justice Garza

This is an appeal from a final decree of divorce. Appellant, Teresa M. Varnes, alleges by two issues that the trial court abused its discretion by declaring in the final decree that insupportability was the ground for her divorce from appellee, William J. Varnes. *See* TEX. FAM. CODE ANN. § 6.001 (Vernon 2006). By two additional issues, Teresa challenges the trial court's denial of her request for "contractual spousal support" under an "Affidavit of Support" signed by William pursuant to the federal Immigration and Nationality Act. *See* 8 U.S.C. § 1183a (2008). We modify the trial court's judgment and affirm as modified.

# I. Background

William met Teresa, a citizen of the Phillippines, in 2004, and the couple married in 2006. In October of 2007, the parties separated, and Teresa filed for divorce on November 7, 2007. Teresa's original petition for divorce noted that there were no children born of the marriage and stated, in relevant part, as follows:

## IV. Grounds

Petitioner [Teresa] and respondent [William] were married and the marriage has become insupportable due to discord and conflict of personalities that destroys the legitimate ends of a marital relationship. The respondent is guilty of domestic violence against petitioner. There is no hope of reconciliation.

. . . .

## VI. Property

. . . [D]uring the existence of the marriage, no property was accumulated and each party has in their possession personal property of the marriage.

The respondent should support petitioner pursuant to USCIS Form I-864 (United States Citizenship and Immigration Services form 'Affidavit of Support'), which is a contract between respondent and petitioner and the United States Government.

(Emphasis in original.) William subsequently filed an answer and counterpetition in which he asserted that "[t]he marriage has become insupportable because of discord or conflict of personalities between [the parties] that destroys the legitimate ends of the marriage relationship and prevents any reasonable expectation of reconciliation."

On January 11, 2008, William filed a motion for partial summary judgment, contending that "[t]here is no evidence of 'domestic violence' as defined by the Texas Family Code." *See* TEX. FAM. CODE ANN. § 71.004 (defining "family violence"). A temporary support hearing was then held on January 22, 2008, during which counsel for both parties expressed to the trial court that they had reached an agreement that William would pay $500 per month to Teresa as temporary support during the pendency of the divorce proceeding. Counsel had also reached an agreement on disposition of William's

summary judgment motion, as evidenced by the following exchange:

[Teresa's counsel]: There's also a motion by Counsel for partial summary judgment and that's to be removed from the docket. It's set for February 19th.

[William's counsel]: Yes, we agree to withdraw our motion. We've come to an agreement on some wording and[—]

[Teresa's counsel]: The wording is on domestic violence, as we have pled in the original petition, Your Honor, we changed that to domestic abuse and that will be[—]Is that your understanding?

[William's counsel]: That's correct. Would you prefer that we read the wording into the record, Your Honor?

THE COURT: That would probably be best.

[William's counsel]: The change of the wording, Your Honor, is it is ordered and decreed that Theresa [sic] M. Varnes, V-a-r-n-e-s, petitioner, and William J. Varnes, respondent, are divorced and that the marriage between them is dissolved based on domestic abuse, consisting of mental and psychological abuse by respondent, but without any physical violence upon petitioner.

[Teresa's counsel]: That was for the final divorce decree, Your Honor.

THE COURT: Okay.

Based on the representations of counsel at the January 22, 2008 hearing, the trial court signed an order on February 13, 2008 providing in relevant part:

The Court finds that the parties have agreed to the following temporary orders during the pendency of the suit, which orders were read into the Court's record:

1.      *Cause of Divorce:* The final decree of divorce shall include the following:

"IT IS ORDERED AND DECREED that TERESA M. VARNES, petitioner, and WILLIAM J. VARNES, Respondent, are divorced and that the marriage between them is dissolved based on domestic abuse consisting of mental and psychological abuse by Respondent, but without any physical violence upon Petitioner."

. . . .

3.      *Trial Settings:*

3

The respondent's motion for partial summary judgment set for February 19, 2008, has been resolved and the hearing is removed from the docket.

Jury trial is set for March 3, 2008, at 9:00 o'clock a.m. for the primary purpose of determining if separate maintenance should be awarded based upon a contractual relationship, and if found that a contract exists, what amount, if any, should be awarded.

A final divorce hearing was held on June 2, 2008. At that hearing, William testified that he was a resident and domiciliary of Calhoun County, Texas for at least six months as of the time of trial, *see* TEX. FAM. CODE ANN. § 6.301 (Vernon 2006); that the marriage had become "insupportable due to discord or conflict of personalities in the marriage relationship"; and that there was no hope of reconciliation. The final decree of divorce, signed by the trial court on June 13, 2008, provided in relevant part as follows:

IT IS ORDERED AND DECREED that Teresa M. Varnes, Petitioner, and William J. Varnes, Respondent, are divorced and that the marriage between them is dissolved on the ground of insupportability.

. . . .

The Court finds that no community property other than personal effects has been accumulated by the parties.

IT IS ORDERED AND DECREED that the personal effects of the parties are awarded to the party having possession.

. . . .

IT IS ORDERED AND DECREED that Petitioner and Respondent are discharged from all further liabilities and obligations imposed by any temporary order of this Court.

. . . .

IT IS ORDERED AND DECREED that all relief requested in this case and not expressly granted is denied.

Teresa's appeal followed.

## II. DISCUSSION

### A. Ground for Divorce

By her first two issues, Teresa claims that the trial court erred by declaring in the

4

final divorce decree that insupportability was the ground for divorce and by not including the language recited in the temporary support order of February 13, 2008. Teresa specifically claims that such declaration was an abuse of discretion, contrary to the agreement of the parties, and not supported by sufficient evidence. We agree.

The trial court repeatedly stated at the June 2, 2008 final hearing that the issue of whether or not domestic abuse had occurred was immaterial because both parties pleaded no-fault grounds for divorce.[1] This, however, ignores the fact that counsel for both parties stipulated at the January 22, 2008 temporary support hearing that the final decree would include language stating that there had been domestic abuse.[2] The record is clear that Teresa's counsel agreed to withdraw the allegation of "domestic violence" in exchange for (1) William's withdrawal of his motion for summary judgment, and (2) William's stipulation that the final decree would include the "domestic abuse" language. The trial court erred by failing to enforce that agreement. *See* TEX. R. CIV. P. 11; *Padilla v. La France*, 907 S.W.2d 454, 461 (Tex. 1995) ("Although a court cannot render a valid agreed judgment absent consent at the time it is rendered, this does not preclude the court, after proper notice and hearing, from enforcing a settlement agreement complying with Rule 11 even

---

[1] The trial court was clearly under the impression that Teresa asserted no-fault grounds for divorce, even though she did assert in the "Grounds" section of her petition that William "is guilty of domestic violence." It is not clear to this Court whether Teresa's petition asserted no-fault or cruelty grounds. *See* TEX. FAM. CODE ANN. § 6.001 (Vernon 2006) ("[T]he court may grant a divorce without regard to fault if the marriage has become insupportable because of discord or conflict of personalities that destroys the legitimate ends of the marital relationship and prevents any reasonable expectation of reconciliation."); *id.* § 6.002 (Vernon 2006) ("The court may grant a divorce in favor of one spouse if the other spouse is guilty of cruel treatment toward the complaining spouse of a nature that renders further living together insupportable."). Nevertheless, we need not address this issue because it has no bearing on the agreement reached by the parties' counsel. *See* TEX. R. APP. P. 47.1.

[2] Teresa explains on appeal that she intially sought the inclusion of "domestic violence" language in the final decree—and later agreed to "domestic abuse" language—because federal law "permits immigrants to continue the process of immigration if a divorce resulted from spousal abuse." Her counsel made a similar representation to the trial court at the final divorce hearing. However, Teresa does not point to any federal statute or case law supporting this contention. In any event, we need not confirm or deny the contention because the parties' agreement as to the language to be included in the final decree of divorce must be enforced, regardless of its ancillary ramifications. *See id.*; TEX. R. CIV. P. 11 (providing that agreements between parties are enforceable if made in open court and entered of record); *Bufkin v. Bufkin*, 259 S.W.3d 343, 354-55 (Tex. App.–Dallas 2008, pet. denied) ("A stipulation . . . is 'an agreement, admission, or concession made in a judicial proceeding by the parties or their attorneys respecting some matter incident thereto.' . . . Stipulations are binding upon the parties, the trial court, and the reviewing court.").

5

though one side no longer consents to the settlement."); *see also Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex. 1979) ("If a party represents to the court that he waives a ground or objection that he has previously asserted in a written motion or response and agrees that a certain issue is the only issue before the court, Rule 11 is satisfied if the oral waiver or agreement made in open court is described in the judgment or an order of the court. Rule 11 expressly approves this procedure.").

William argues on appeal that "there was no agreement with regards . . . to [sic] the final order; it was an agreement as to the wording on the pleadings and petition as signified in a temporary order." However, the record, including the transcript of the January 22, 2009 hearing, belies this claim. William's counsel recited the agreed-upon language as requested by the trial court, and when Teresa's counsel stated "That was for the final divorce decree, Your Honor," William's counsel did not object. Moreover, William's counsel did not raise any objection with the trial court as to the February 13, 2008 order which specifically stated that the agreed-upon language would be included in the final decree of divorce.

William further argues that the trial court did not err because his testimony, which was the only evidence adduced at the final divorce hearing, supported only the ground of insupportability. It is true that no evidence was presented at the final hearing that would establish domestic abuse. However, it is not necessary for a party to a divorce to prove facts which are distinctly alleged by the adverse party. *McCaskill v. McCaskill*, 761 S.W.2d 470, 472 (Tex. App.–Corpus Christi 1988, pet. denied) (citing *Taylor v. Catalon*, 140 Tex. 38, 166 S.W.2d 102 (Tex. 1942)). As noted above, William's counsel had stipulated at the January 22, 2008 hearing that the final decree of divorce would state that William had committed "domestic abuse consisting of mental and psychological abuse . . . but without any physical violence." Because a valid agreement existed as to this language, Teresa was not required to present any evidence at trial to prove the facts alleged therein. *See*

6

*id.* ("A divorce petition that contains allegations of grounds for divorce serves as a judicial admission and a substitute for evidence of the grounds alleged.").

We conclude that the final decree of divorce must be modified to include the agreed-upon language contained in the trial court's February 13, 2008 order.[3] Teresa's first two issues are sustained.

## B.      "Contractual Spousal Support"

### 1.      Community Property Division

By her third issue, Teresa contends that the trial court abused its discretion by denying her "community property division regarding spousal support." *See* TEX. FAM. CODE ANN. § 7.001 (Vernon 2006) (stating that, in a divorce decree, "the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage"). However, Teresa's petition stated clearly, and William did not deny, that "no property was accumulated" during the marriage and that "each party has in their possession personal property of the marriage." Because the parties agreed that there was no community property to be divided in this case, the trial court did not err by declining to include such a division in the final decree. We overrule Teresa's third issue.

### 2.      Affidavit of Support and "Mother Hubbard" Clause

By her fourth issue, Teresa contends that the trial court erred by: (1) failing to enforce William's support obligations under an "Affidavit of Support" signed by William pursuant to the Immigration and Nationality Act (the "Act"), *see* 8 U.S.C. § 1183a; and (2) precluding Teresa from seeking to enforce the affidavit in a separate suit by including a "Mother Hubbard" clause in the final divorce decree.

---

[3] We note that the agreed-upon language to be included in the final divorce decree does not specifically state the grounds upon which the divorce is being granted. Therefore, in accordance with the agreement reached by the parties' counsel, we modify the decree to state that the divorce is granted on the ground of cruelty. *See infra* section III; *see also* TEX. FAM. CODE ANN. § 6.002; *In re Marriage of Rice*, 96 S.W.3d 642, 648 (Tex. App.–Texarkana 2003, no pet.) ("Although infrequently used since the introduction of no-fault divorce, a Texas court may still grant a divorce on the ground of cruel treatment.").

A trial court may award spousal maintenance only if: (1) the spouse from whom maintenance is requested was convicted of, or received deferred adjudication for, a criminal offense constituting family violence within two years of the filing of the divorce petition or while the suit was pending; or (2) the duration of the marriage was ten years or longer and the spouse seeking maintenance meets certain other conditions. TEX. FAM. CODE ANN. § 8.051 (Vernon 2006). It is undisputed that neither of these scenarios apply to the instant case. Nevertheless, Teresa pleaded in her divorce petition and argues on appeal that the trial court should have ordered William to make periodic support payments to her because William executed an "Affidavit of Support" in connection with bringing Teresa to the United States to marry her.

The record reflects that on February 26, 2007, William executed a form promulgated by United States Citizenship and Immigration Services entitled "Form I-864, Affidavit of Support Under Section 213A of the Act." The affidavit is intended to ensure that those attempting to be admitted to the United States are not likely at any time to become a public charge. *See* 8 U.S.C. § 1182(a)(4) (2009).[4] To that end, the affidavit provides that the income and assets of the affiant (the "sponsor") are considered as being available to the individual attempting to gain admission (the "sponsored alien"). If the sponsored alien receives any means-tested public benefit, the entity providing such benefit may sue the sponsor for reimbursement. *Id.* § 1183a(b). Crucially, the affidavit also provides that the "sponsor agrees to provide support to maintain the sponsored alien at an annual income that is not less than 125 percent of the Federal poverty line during the period in which the

---

[4] Section 212(a) of the Act defines certain classes of aliens that are ineligible to receive visas or to be admitted to the United States. 8 U.S.C. § 1182(a) (2009). One such class is defined as "Any alien who, in the opinion of the consular officer at the time of application for a visa, or in the opinion of the Attorney General at the time of application for admission or adjustment of status, is likely at any time to become a public charge . . . ." *Id.* § 1182(a)(4)(A). In determining whether an alien is inadmissible under this provision, the consular officer or Attorney General may consider whether or not an affidavit of support has been executed on behalf of the alien under section 213a of the Act. *Id.* § 1182(a)(4)(B)(ii); *see id.* § 1183a (2008).

8

affidavit is enforceable . . . ."[5]  *Id.* § 1183a(a)(1)(A).

The instructions accompanying Form I-864 clearly spell out the obligations required of the sponsor and provide specifically that divorce does not terminate those obligations.[6] Moreover, the Act specifically states that the sponsored alien may bring suit against the sponsor in "any appropriate court" to enforce the sponsor's financial support obligations. *Id.* § 1183a(e)(1).

As reflected in the temporary order of February 13, 2008, the parties intended to try this issue at the final divorce hearing.  At that hearing, William's counsel alleged that:  (1) the affidavit only guarantees support to individuals who "ha[ve] been here for a reasonable amount of time and ha[ve] legal permanent resident status"; and (2) the affidavit, though signed by William, was "never filed" and "never approved" and therefore was "illusory." Nevertheless, the trial court declined to hear the issue, stating to Teresa's counsel:  "[Y]ou obviously can file a suit that sounds in contract if you want to do that and this paper can

---

[5] Paragraph (a)(2) of section 213a of the Act, entitled "Period of enforceability," provides that "An affidavit of support shall be enforceable with respect to benefits provided for an alien before the date the alien is naturalized as a citizen of the United States, or, if earlier, the termination date provided under paragraph (3)."  8 U.S.C. § 1183a(a)(2).  Paragraph (a)(3) provides for an earlier termination date if the sponsored alien completes a required period of employment.  *Id.* § 1183a(a)(3).

[6] The instructions to Form I-864 provide in relevant part:

Your obligations under a Form I-864 will end if the person who becomes a permanent resident based on a Form I-864 that you signed:

- Becomes a U.S. citizen;

- Has worked, or can be credited with, 40 quarters of coverage under the Social Security Act;

- No longer has lawful permanent resident status, and has departed the United States;

- Becomes subject to removal, but applies for and obtains in removal proceedings a new grant of adjustment of status, based on a new affidavit of support, if one is required; or

- Dies.

Note that divorce **does not** terminate your obligations under this Form I-864.

(Emphasis in original.)  *See* 8 C.F.R. § 103.2(a) (2008) (incorporating instructions into regulations).

become the subject of that contract. But it requires altogether different pleadings than what you have on file at this time."

We agree with the trial court. Teresa's petition merely alleged, under a section entitled "Property," that William "should support" her pursuant to the Affidavit of Support. It did not set forth any allegation that William breached any contract, nor did it request declaratory relief relating to William's obligations under the affidavit. We find that the trial court did not err by refusing to hear the contract issue.

Teresa contends that, even if the trial court was correct in declining to hear the contract issue, the court improperly precluded her from filing a subsequent action to enforce the Affidavit of Support by including a "Mother Hubbard" clause[7] in the final decree, stating "that all relief requested in this case and not expressly granted is denied." We are not convinced that the "Mother Hubbard" clause contained in the final divorce decree prevents Teresa from bringing suit against William to enforce the affidavit, because Teresa's petition asked merely for an order declaring the parties' marriage to be dissolved. Further, it was undisputed that Teresa was ineligible for spousal maintenance under the family code, *see* TEX. FAM. CODE. ANN. § 8.051, and the trial court's comments at the final divorce hearing made clear that it contemplated Teresa being able to file a subsequent suit pleading separate breach of contract grounds against William based on the affidavit. Accordingly, it is not apparent that Teresa's claim against William under the Affidavit of Support was disposed of as part of "all relief requested in this case." Still, to eliminate any potential for confusion, we modify the judgment to clarify that Teresa is not precluded from filing suit to pursue such a claim. *See infra* section III. Teresa's fourth issue is sustained in part.

---

[7] So named because, in the nursery rhyme, Old Mother Hubbard has nothing more to give her dog. *See Int'l Bhd. of Teamsters Local 19 v. Sw. Airlines Co.*, 875 F.2d 1129, 1137 (5th Cir. 1989) (Goldberg, J., dissenting); *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 203 (Tex. 2001). The term is more commonly used to describe a "catch-all" provision in an oil and gas lease that is intended to bring within the terms of the lease small pieces of land owned or claimed by the lessor that are adjacent to the described land. *See, e.g., Jones v. Colle*, 727 S.W.2d 262, 262-63 (Tex. 1987).

### III. Conclusion

We modify the trial court's final decree of divorce: (1) by vacating the paragraph stating the ground for divorce ("IT IS ORDERED AND DECREED that Teresa M. Varnes, Petitioner, and William J. Varnes, Respondent, are divorced and that the marriage between them is dissolved on the ground of insupportability.") and substituting in lieu thereof the following agreed-upon language: "IT IS ORDERED AND DECREED that Teresa M. Varnes, Petitioner, and William J. Varnes, Respondent, are divorced and that the marriage between them is dissolved on the ground of cruelty based on domestic abuse consisting of mental and psychological abuse by Respondent, but without any physical violence upon Petitioner"; and (2) by inserting the following statement in the final decree: "Nothing in this decree shall be construed as prohibiting Teresa from filing suit against William in an appropriate court in order to enforce the Affidavit of Support as provided under section 213a of the Immigration and Nationality Act." *See* 8 U.S.C. § 1183a(a)(1), (e)(1). The trial court's judgment is affirmed as modified herein.

DORI CONTRERAS GARZA,
Justice

Memorandum Opinion delivered and
filed this the 23rd day of April, 2009.

11